IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICK C. LYNN,

  Plaintiff,

v.            CASE NO. 19-3117-JAR

CHARLIE WILLNAUER, et al.,

  Defendants.

ORDER

  Plaintiff, Patrick C. Lynn, brings this pro se civil rights case under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). Plaintiff has filed a motion for leave to proceed in forma pauperis (Doc. 4), and a Motion for Filing Fee Waiver Based on Imminent Dangers of Serious Physical Injury (Doc. 3–1).

  Plaintiff is subject to the "three-strikes" provision under 28 U.S.C. § 1915(g). Court records fully establish that Plaintiff "has, on 3 or more prior occasions, while incarcerated . . . , brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."[1] Accordingly, he may proceed in forma pauperis only if he establishes a threat of imminent danger of serious physical injury. *Id*. The Court has examined the Complaint (Doc. 1) and Plaintiff's Motion for Filing Fee Waiver Based on Imminent Dangers of Serious Physical Injury (Doc. 3–1) and finds no showing of imminent danger of serious physical injury.

  As documented by the Court in Plaintiff's previous cases, Plaintiff is a highly litigious Kansas inmate. *See Lynn v. Patty*, No. 16-3254-JTM, Doc. 12 (Feb. 28, 2017); *Lynn v. Kansas*,

---

[1] *See, e.g., Lynn v. McClain,* 12 F. App'x 676, 679 (10th Cir. 2001) (noting that Lynn's "past civil filings have subjected him to the 'three strike' provisions"); *Lynn v. McClain,* 162 F.3d 1173 (10th Cir. 1998) (finding that Lynn "now has a total of six strikes against him").

1

No. 16-3089-JTM, Doc. 18 (Aug. 5, 2016). Plaintiff currently has three pending cases in this Court and another case pending on appeal. *See Lynn v. Cline*, No. 19-3003-CM (D. Kan.); *Lynn v. Price*, No. 19-3125-DDC (D. Kan.); and *Lynn v. McCurrie*, No. 17-3041-JWB-KGG (D. Kan.) (on appeal). Plaintiff filed the instant case on July 2, 2019, alleging inadequate medical care at LCF in violation of the Eighth Amendment. He also alleges state law claims for medical malpractice and criminal mistreatment of a confined person.

Plaintiff alleges that he has a heart condition and has had multiple heart attacks following his quadruple heart bypass operation on July 3, 2014, and "has been repeatedly hospitalized for cardiac events & has multiple heart stents." (Doc. 1, at 3.) Plaintiff alleges that in August of 2018, he received a Troponin blood test during a month of calm to establish his base Troponin level at 0.002. On January 24, 2019, and March 8, 2019, Plaintiff had two cardiac events while housed at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"), and was taken to the hospital by ambulance and admitted for several days based on his Troponin tests. One Troponin test registered at 0.116, but Plaintiff cannot recall the results of the second test.

On May 23, 2019, Plaintiff was transferred from HCF to LCF, and his legal and personal property was "maliciously ransacked/compromised/& criminally destroyed" by LCF staff, causing Plaintiff to suffer "continuous distress which dramatically affected his physical & psychological health." (Doc. 1, at 3–4.) Plaintiff alleges that on May 25, 2019, he suffered severe heart attack symptoms and a Troponin test was ordered but took over five hours to be picked up by the courier and taken to the lab at St. John's Hospital three miles away. Plaintiff alleges that during the May 25th event, he was taken to the Clinic ER, was denied aspirin, and the nurse eventually directed security staff to return Plaintiff back to segregation. When the results of Plaintiff's Troponin test

came back at 0.116, Dr. Monir ordered Plaintiff rushed to a local hospital for cardiac care, and he was discharged three or four days later.

Plaintiff alleges that on June 22, 2019, Plaintiff suffered severe heart attack symptoms and Dr. Monir ordered a Troponin test which took over one hour and came back at 0.135. Dr. Monir directed the RN to call EMTs and transport Plaintiff to KU Medical Center where he was admitted for four days. On June 25, 2019, shortly after his return to LCF, Plaintiff was returned to the Clinic ER due to chest pains. He was given a Troponin test which came back at 0.116, and Dr. Harris ordered Plaintiff to be placed in the infirmary, with Troponin tests ordered every twelve hours. Plaintiff alleges that he was denied pain medication and was discharged to segregation on June 26, 2019. Plaintiff continued to have chest pains that day, was returned to the infirmary on June 26th, and a Troponin test was ordered and came back at 0.127. Plaintiff was refused pain medication and was denied transfer to a hospital. On June 27th, Plaintiff demanded to be taken to the hospital or returned to segregation, and he was placed in a special "lockbox security infirmary cell" around noontime. Plaintiff was given another Troponin test which came back at 0.124, but he was denied pain medication and denied transfer to a hospital. Plaintiff was told by an RN that Dr. Harris refused to send Plaintiff to the hospital again because it cost too much to keep sending him to the hospital.

Plaintiff alleges that the denial of pain medication and the denial of an emergency transport to the hospital violated his Eighth Amendment rights. Plaintiff also alleges that medical staff should be required to transport Troponin tests to the labs if the courier does not pick up the sample within thirty minutes. Plaintiff alleges that he is in imminent danger of suffering another heart attack or a crippling stroke.

In his motion for filing fee waiver (Doc. 3–1) Plaintiff notes that since his transfer to LCF on May 23, 2019, he has been transported to St. John's Hospital (from May 26 to May 28), to KU Medical Center (from June 22 to June 25), and was admitted to the LCF infirmary from June 25 to June 28, 2019. Plaintiff alleges that he has been rescheduled for three major operations at KU Medical Center, including an aortic bypass. Plaintiff alleges that his "keep on person" heart medications have been cancelled and that he had to take several nitro pills while writing the complaint in this case.

These allegations fail to contain plausible and credible allegations of imminent danger of serious physical harm. "To meet the only exception to the prepayment requirement, a prisoner who has accrued three strikes must make 'specific, credible allegations of imminent danger of serious physical harm.'" *Davis v. GEO Group Corr.*, 696 F. App'x 851, 854 (10th Cir. May 23, 2017) (unpublished) (quoting *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011)). The prisoner "should identify at least the general nature of the serious physical injury he asserts is imminent," and "should make a specific reference as to which of the defendants may have denied him what medication or treatment for what ailment on what occasion." *Id*. (quoting *Hafed*, 635 F.3d at 1180). "Vague and utterly conclusory assertions are insufficient." *Id*.

The harm must be imminent or occurring at the time the complaint is filed, "allegations of past harm do not suffice." *Id*. (citations omitted). The "imminent danger" exception has a temporal limitation—[t]he exception is construed narrowly and available only 'for genuine emergencies,' where 'time is pressing' and 'a threat . . . is real and proximate.'" *Lynn v. Roberts*, No. 11-3073-JAR, 2011 WL 3667171, at *2 (D. Kan. Aug. 22, 2011) (citation omitted). "Congress included an exception to the 'three strikes' rule for those cases in which it appears that judicial action is needed as soon as possible to prevent serious physical injuries from occurring in the

meantime.'" *Id*. (citation omitted). "[A]llegations of past misconduct of defendants and even of past injury to plaintiff are insufficient to allow a three-striker to proceed IFP." *Id*. (citation omitted). "[E]ven specific examples of being denied health care in the past are not sufficient to satisfy the imminent danger exception under § 1915(g)." *Id*. at *3. (citation omitted). The allegations of imminent physical danger must be plausible and credible. *Id*. (citations omitted).

Plaintiff believes the Troponin test results are taking too long and that he should be transported to the hospital each time his results come back elevated. Thus, Plaintiff disagrees with the healthcare provider's course of treatment, but acknowledges that he is receiving medical care. Plaintiff acknowledges that he received quadruple bypass surgery in the past, has received several heart stents, and "has been repeatedly hospitalized for cardiac events." Plaintiff was housed at LCF for forty days prior to filing his Complaint, and he acknowledges that during that time he spent time in the Clinic ER and infirmary, and was transported to a hospital on two occasions, each resulting in multiple-day stays in the hospital. Despite not being allowed to keep his medication on his person, he acknowledges that he had access to several nitro tablets while drafting his complaint in this case. He also acknowledges that he is scheduled for three upcoming operations, including an aortic bypass surgery.

"Numerous courts have concluded that where a three-striker inmate's allegations reflect that he has had access to medical care and simply disagrees with the opinions of the medical personnel who have examined him, he fails to satisfy the imminent danger requirement of 28 U.S.C. § 1915(g)." *Showalter v. Lee*, No. 7:15CV00106, 2015 WL 1800478, at *3 (W.D. Va. April 16, 2015) (citing *Joyner v. Fish*, No. 7:08CV00359, 2008 WL 2646691 (W.D. Va. July 3, 2008) (imminent danger not demonstrated when plaintiff had been given thorough medical treatment, never been denied doctor visit, and been advised to take medication but disagreed with

opinions of medical professionals); *Renoir v. Mullins*, No. 7:06CV00474, 2006 WL 2375624 (W.D. Va. Aug. 15, 2006) (finding disagreement with diagnosis and prescribed treatment is not imminent danger of serious physical harm); *Brown v. Beard*, 492 F. Supp. 2d 474, 478 (E.D. Pa. June 27, 2007) (prisoner was not in imminent danger when disputing the quality of treatment he was receiving for various medical conditions); *Watley v. Escobar*, No. 4:09CV3003, 2010 WL 1643801 (N.D. Ohio April 22, 2010) (no imminent danger where plaintiff received medical treatment but disagreed with conclusions of medical personnel over pain medication and medical procedures); *James v. Hunter*, No. 08-0729-CG-B, 2009 WL 3052131, at *3 (S.D. Ala. Sept. 18, 2009) (disagreement with medical treatment provided does not satisfy § 1915(g) exception); *Baugh v. Missouri Dep't of Corrections*, No. 4:08CV01517 ERW, 2008 WL 4831783, at *1, n. 1 (E.D. Mo. Nov. 5, 2008) (no imminent danger where plaintiff admitted he was offered treatment for medical conditions but disagreed with offered treatment)).

In *Van Dyke v. Pilland*, plaintiff argued that defendants were either giving him inadequate doses, or refusing doses altogether, of certain medications that he needed for high cholesterol and migraines. *Van Dyke v. Pilland*, No. 1:12-cv-129-RJC, 2013 WL 2632605, at n*3 (W.D. N.C. June 12, 2013). Plaintiff alleged that because he was not receiving the medications as needed, he was at risk of suffering a heart attack or stroke, both of which "run in his family." *Id*. The court found that plaintiff's "allegations are conclusory and do not plausibly allege that Plaintiff is under *imminent* danger of serious physical injury." *Id*. at n.1.

In *Brown v. Lyons*, plaintiff claimed that he was "in imminent danger of various cardiovascular diseases because of Defendants' failure to provide blood pressure monitoring, a proper diet, cholesterol-lowering medication, genetic testing, and stress management." *Brown v. Lyons*, 977 F. Supp. 2d 475, 484 (E.D. Pa. 2013). The court held that even "if Brown has certain

conditions that place him at risk of heart disease," such as high blood pressure, "that does not mean heart disease is "impending" or about to "occur at any moment." *Id*. (citation omitted). "Allegations that prison medical personnel are failing to treat a prisoner's risk factors for heart disease, even purposefully so, are still a far cry from the type of allegations of inadequate medical treatment that have been held to pose an imminent danger of serious physical injury." *Id*. (citing *Brown v. Beard*, 492 F. Supp. 2d at 479; *see also Ball v. Famiglio,* 726 F.3d 448, 468 (3d Cir. 2013) (concluding that allegations of poor medical care that "may prove detrimental to [plaintiff's] health over time . . . do not represent 'imminent dangers'")).

In *Lewis v. Stephens*, the plaintiff alleged that he suffers from coronary disease and that he was receiving inadequate medical treatment. *Lewis v. Stephens*, No. H-14-0002, 2014 WL 108909, at *2 (S.D. Tex. Jan. 9, 2014). Plaintiff stated that he "strongly feels that he may have a massive heart attack or a serious stroke because of the faint feelings and the pain he experiences in both[ ] his left and right [Carotid Arteries]." *Id*. The court held that "Lewis has previously used this tactic, which was rejected by the district court because it was clear that he was tailoring his allegations to circumvent the three-strikes bar." *Id*. (citation omitted). The court also found that the "allegations and arguments in the current complaint demonstrate his dissatisfaction with the level of care he is receiving, which is insufficient to support a claim of deliberate indifference." *Id*. (citations omitted); *see also Baugh*, 2008 WL 4831783, at *1 (where plaintiff alleged he was subject to physical harm because he was an older man with a chronic heart condition subject to stroke, heart attack or premature death, court found that plaintiff admitted that he was offered treatment for his medical condition, but disagreed with that treatment) (citing *Brown v. Beard*, 492 F. Supp. 2d 474 (E.D. Pa. 2007) (finding that prisoner was not in imminent danger of serious physical injury when prisoner did not dispute that he was receiving medical attention for high

7

blood pressure, low blood sugar and high cholesterol, but merely disputed findings and quality of treatment he was receiving)).

Plaintiff has been provided medical care and his disagreements with medical staff do not meet the imminent danger exception. Accordingly, pursuant to § 1915(g) Plaintiff may not proceed in forma pauperis in this civil action. Plaintiff is given time to pay the full $400.00 district court filing fee[2] to the Court. If he fails to pay the full fee within the prescribed time, the Complaint will be dismissed based upon Plaintiff's failure to satisfy the statutory district court filing fee required by 28 U.S.C. § 1914.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Filing Fee Waiver Based on Imminent Dangers of Serious Physical Injury (Doc. 3–1) and motion to proceed in forma pauperis (Doc. 4) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 19, 2019,** to submit the $400.00 filing fee. The failure to submit the fee by that date will result in the dismissal of this matter without prejudice and without additional prior notice.

**IT IS SO ORDERED**.

**Dated on this 1st day of August, 2019, in Kansas City, Kansas.**

> s/ Julie A. Robinson
> **JULIE ROBINSON**
> **Chief U. S. District Judge**

---

[2] If a person is not granted in forma pauperis status under § 1915, the fee to file a non-habeas civil action includes the $350.00 fee required by 28 U.S.C. § 1914(a) and a $50.00 general administrative fee pursuant to § 1914(b) and the District Court Miscellaneous Fee Schedule prescribed by the Judicial Conference of the United States.