UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PATRICK C. LYNN,<br><br>                    Plaintiff,<br>v.<br><br>CHARLIE WILLNAUER, et al.,<br><br>                    Defendants, | Case number: 19-3117-HLT |

### DEFENDANT TODD KOOB'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/TO DISMISS

Defendant Todd Koob, through undersigned counsel, respectfully submits this memorandum in support of his Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, D. Kan. Rule 56.1, and F.R.C.P. 12(b)(1).

**I.    BACKGROUND AND PRESENT MATTER BEFORE THE COURT**

On July 7, 2019, Plaintiff Patrick C. Lynn filed a pro se prisoner civil rights claim under 42 U.S.C. § 1983 for violation of his Eighth Amendment Right to be free from cruel and unusual punishment, among other claims. Plaintiff's claims relate to his medical care at various Kansas Department of Corrections ("KDOC") Facilities on various dates. Plaintiff's First Amended Complaint, filed February 8, 2021, is the operative pleading (Doc. 43). The KDOC filed a *Martinez* Report on November 8, 2021 (Doc. 63), to which plaintiff filed responses on April 11th and 15th, 2022 (Docs. 80–81). On August 1, 2022, the court entered a memorandum and order screening plaintiff's First Amended Complaint as required by 28 U.S.C. § 1915A. After which, the remaining defendants were served and instructed to answer. (Doc. 82.)

Defendant Koob files this motion seeking judgment in his favor as a matter of law because plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e(a). Defendant Koob also seeks summary judgment because there is no genuine dispute as to any material fact regarding plaintiff's claim against Defendant Koob and Defendant Koob is entitled to judgment as a matter of law. There is no material dispute because the parties agree that plaintiff asked Defendant Koob to call plaintiff an ambulance. Defendant Koob then fulfilled his gatekeeper role by speaking to medical staff about plaintiff's request. The law establishes that where a prison official or subordinate medical staff fulfills their gatekeeping function, the official was not deliberately indifferent to the inmate's serious medical needs. Accordingly, judgment in Defendant Koob's favor is appropriate.

## II.  STATEMENT OF UNCONTROVERTED MATERIAL FACTS

The following facts may be considered undisputed for the purpose of this motion only:

*Plaintiff's medical history and treatment in the HCF infirmary in December 2019*

1. At all times relevant to plaintiff's First Amended Complaint, Plaintiff was an inmate in KDOC custody. (Doc. 43-3, at 1.)

2. Plaintiff is currently housed at El Dorado Correctional Facility ("EDCF"). (Sept. 1, 2021, Docket Annotation.)

3. On December 28, 2019, plaintiff had also been housed at EDCF, but was transferred to Hutchinson Correctional Facility ("HCF). (Doc. 63-3, at ¶ 8.)

4. Debra Lundry, the Health Services Administrator at HCF, "conducted a chart audit . . . and notified the HCF staff of Mr. Lynn's medical orders." (Doc. 63-3, at ¶¶ 2, 4, 8.)

5. Among other things, plaintiff's medical history includes: "severe coronary artery disease, Chronic Angina (chest pain)" and plaintiff underwent a quadruple bypass surgery in 2014. (Doc. 43-3 at 2, ¶ 2; Doc. 63, at 9.)

6. Medical staff at HCF affirmed that plaintiff has a history of refusing to take his prescribed medication. (Doc. 63-3, at ¶ 7; 63-38, at ¶ 11.)

7. When plaintiff arrived at HCF on December 29, 2019, he saw Nurse Ostrom, who "explained that HCF was continuing [plaintiff's] care plan as it existed previously at EDCF and LCF. [Plaintiff] threatened to sue Nurse Ostrom and report Nurse Ostrom to the Board of Healing Arts for not making all of [plaintiff's] medications [keep on person] KOP . . . ." This was something the nurse was not authorized to change. (Doc. 63-3, at ¶ 9.)

8. On December 29, 2019, plaintiff visited the infirmary due to heart palpitations and shortness of breath, but he was released to his housing unit in stable condition after his symptoms decreased. (Doc. 63-3, at ¶ 10.)

9. On December 30, 2019, plaintiff returned to the HCF infirmary reporting that he had chest pains; plaintiff had taken three nitroglycerin tablets before arriving at the clinic; he was admitted to the HCF infirmary at 7:45 p.m. (Doc. 63-3, at ¶ 11; Doc. 63-10 at ¶¶ 2–3; Doc. 43-3, at p. 13, ¶ 19 ("while at HCF, I suffered severe heart attack symptoms & was placed into the HCF Infirmary"; Doc. 63-38, at ¶ 11.)

10. Medical staff at HCF affirmed that they "attempted to examine Mr. Lynn with an EKG but were unable to do so due to Mr. Lynn's uncooperativeness. Mr. Lynn would not stop tapping on his chest and moving his arms around which ultimately impaired the test results." (Doc. 63-3, at ¶ 11.)

11. Medical staff at HCF affirmed that the on-call physician ordered a stat Troponin test, and that plaintiff remained in the infirmary to await the test results; Plaintiff had to be transported via wheelchair due to reported shortness of breath, but he "was observed to be

continuously yelling at HCF correctional staff without . . . having impaired breathing at the time." (Doc. 63-3, at ¶ 12; Doc. 43-3, at p. 13, ¶ 19.)

12. Plaintiff's lab results came back with a Troponin level of 0.075 ng/ml, which the on-call physician determined was within normal limits for plaintiff. (Doc. 63-3, at ¶ 13; Doc. 63-38, at ¶ 11; Doc. 43-3, at p. 13, ¶ 19.)

13. The on-call doctor decided that plaintiff should not be admitted to a hospital because his Troponin levels were normal for plaintiff. (Doc. 63-8, ¶ 10.)

14. While in the medical clinic at HCF, plaintiff was under the supervision of medical staff and was "in a clinic isolation cell directly across from the nurse's station." (Doc. 63-10, at ¶ 3; Doc. 63-12, at ¶ 3.)

15. In the evening on December 30, 2019, plaintiff was evaluated by nurse Barbara Dickerson. (Doc. 63-8, at ¶¶ 2, 5, 8.)

16. Nurse Dickerson measured plaintiff's vitals, including his blood pressure, pulse, and breathing respirations. (Doc. 63-8, at ¶ 8.)

17. Medical staff reported, and video footage demonstrates, that plaintiff was uncooperative, jumped off his bed screaming at staff, threatening them and their families, and that plaintiff did not appear to suffer from shortness of breath. (Doc. 63-3, at ¶ 14; Doc. 63-4; Doc. 63-8, at ¶ 9. "Mr. Lynn was verbally abusive to [Nurse Dickerson] yelling that [she] was a '<u>stupid nurse</u>,' a '<u>dumb bitch</u>,' and that he would '<u>have [staffs'] asses and kill [them]</u>.'" (emphasis in original); Doc. 63-10, at ¶ 3; Doc. 63-38, at ¶ 11.)

*Defendant Koob's limited interaction with plaintiff on December 31, 2019*

18. At all times relevant to plaintiff's First Amended Complaint, Defendant Koob was employed by the KDOC at the Hutchinson Correctional Facility ("HCF"). (Doc. 63-10.)

4

19. Around 2:00 a.m. on December 31, 2019, Defendant Koob checked on plaintiff in his infirmary cell. (Doc. 63-10, at ¶ 4; Doc. 43-3, at p. 13, ¶ 19.)

20. Plaintiff asked Defendant Koob to call an ambulance for him. (Doc. 63-10, at ¶ 4; Doc. 43-3, at p. 13, ¶ 19.)

21. Defendant Koob did not call an ambulance. (Doc. 63-10, at ¶ 4; Doc. 43-3, at p. 13, ¶ 19.)

22. Defendant Koob affirmed that he "would have spoken to the medical staff about whether it would be necessary to . . . call an ambulance . . . [he] generally leave[s] that decision up to the medically trained contract healthcare provider who, at the time, was Corizon" (Doc. 63-10, at ¶ 4) and "would have spoken to the medical staff about whether it would be necessary to . . . call an ambulance. Because of the proximity of [plaintiff] to the nurse's station and because of all the noise he was making, [Defendant Koob was] certain they were well aware of Mr. Lynn's complaints and requests." (Doc. 63-10, at ¶ 5.)

23. Defendant Koob's decision to consult medical staff and defer to their decisions regarding medical care and treatment are consistent with KDOC HCF General Orders. (Doc. 63-28, at p. 4, "The need for transfer and the means of transportation to higher levels of care in appropriate medical facilities shall be determined by the attending physician in charge of the case." "It shall be the responsibility of the senior medical officer at the emergency site, or in that officer's absence, that of the senior security officer, to make immediate arrangements for advising the hospital emergency room of any planned patient transfer to that facility as soon as it is determined that such a transfer is medically advised."; Doc. 63-29, at p. 2 "A. Emergency Services: 1. Access to health care personnel in the event of an emergency situation shall be through corrections staff personnel. a. When health care staff are on-site, calls should be directed to the clinic for directions."; Doc. 63-30, at p. 2 "Any

employee who has reason to believe an offender is in need of emergency care shall immediately notify the medical staff".)

24. Defendant Koob also affirmed that he has "known Mr. Lynn for many years. For that time, he has consistently been loud, disruptive, complaining and demanding if he didn't get his way. The behavior on that night is consistent with his long-time behavior. He often times works himself into a rage and maintains it for a length of time, as was the case on the early morning of December 31, 2019." (Doc. 63-10, at ¶ 8.)

25. Around 3:00 a.m., plaintiff calmed down and appeared to be sleeping restfully. (Doc. 63-8, at ¶ 10.)

26. At 4:30 a.m., plaintiff refused breakfast and his morning medications. (Doc. 63-38, at ¶ 12).

27. At 7:45 a.m., plaintiff yelled that he had chest pain, but when a nurse and two officers entered his cell, he told them to "Get the hell outta here." (Doc. 63-38, at ¶ 13.)

28. At 8:15 a.m., plaintiff refused to allow medical staff to measure his vitals. (Doc. 63-38, at ¶ 16.)

29. At 9:15 a.m., Dr. Monir checked on plaintiff when he made his rounds at the infirmary and noted: "during which time Mr. Lynn was still very upset, cursing at and threatening the officers and nurse present. Patient denied chest pain, shortness of breath, syncope, dizziness, or diaphoresis. I encouraged Mr. Lynn to calm down because such events could elevate his blood pressure and heart rate. Mr. Lynn was examined. His heart had regular rate and rhythm. No carotid bruit or jugular vein distention were present. No edema in his extremities was observed. Mr. Lynn's electrocardiography showed no acute findings. I noted that troponin levels were within normal limits for the patient. Ultimately, I was able

to calm Mr. Lynn down and told him that he should return to the infirmary should his symptoms persist or worsen and encouraged him to take his medications as prescribed. Mr. Lynn was appropriately alert and oriented. Mr. Lynn stated that he understood my directions." (Doc. 63-3, at ¶ 15, Doc. 43-3, at p. 13, ¶ 20; Doc. 63-38, at ¶ 18.)

30. Plaintiff "returned to his living area without any sign of acute distress at or around 7:11 p.m. on December 31, 2019." (Doc. 63-38, at ¶ 19.)

*Plaintiff's failure to exhaust administrative remedies*

31. Elizabeth K. Smith, an Administrative Specialist at HCF, and a KDOC records custodian affirmed that she "searched the record for any grievances filed by Patrick Lynn . . . regarding the failure of Todd Koob to call an ambulance for him . . . on December 30 and 31, 2019 . . . [and] found no grievances from Mr. Lynn for that time frame for such a complaint." (Doc. 63-14, at ¶ 3.)

32. Keeton Hartley, the KDOC employee responsible for investigating and processing grievances at Lansing Correctional Facility ("LCF") "examined the files for grievances filed by Patrick Lynn . . . concerning his issues with his medical treatment for the [relevant] timeframe and found none." (Doc. 63-23, at ¶¶ 1, 3.)

33. Plaintiff did not file a grievance regarding Defendant Koob's refusal to call plaintiff an ambulance on December 31, 2019, within 15 days as required by K.A.R. 44-15-101b and K.S.A. 75-52,138 (Doc. 63-14, Doc. 63-23.)

34. When an inmate claims they are injured while in KDOC custody, they are required to file a personal injury claim within 10 days of the claimed personal injury. K.A.R. 44-16-104a; plaintiff did not file a personal injury claim within 10 days of his December 30–31, 2019

7

injury as required by K.A.R. 44-16-104a(a) and K.S.A.75-52,138. (Doc. 63-14, Doc. 63-23.)

35. It appears that plaintiff filed a personal injury claim form that he dated March 10, 2020, although that form states that the injury occurred on December 31, 2020. (Doc. 63-36 "around 2am–3am of 12-31-19, Capt. Koob came into Inf. Rm. . . . I pleaded w/him to exercise his independent authority to call EMS to assess me & take me to a hospital . . . .".) (Doc. 63-36.)

36. In plaintiff's March, 10, 2020 form, plaintiff states "I previously submitted this claim . . . it too [sic] corruptly disappeared." (Doc. 63-36.)

37. KDOC records indicate that the March 10, 2020 form was received on July 27, 2020 by DOC Management Area and was forwarded to El Dorado Correctional Facility ("EDCF") on September 2, 2020. (Doc. 63-36; 63-37.)

38. Plaintiff did not seek an informal resolution of his claim with KDOC personnel. (Doc. 63-14, Doc. 63-23.)

39. Plaintiff did not timely file a grievance report form or personal injury form to his Unit Team. (Doc. 63-14, Doc. 63-23.)

40. Plaintiff did not submit a grievance or personal injury claim to the warden. (Doc. 63-14, Doc. 63-23.)

41. Plaintiff did not submit a grievance or personal injury claim to the Secretary of Corrections. (Doc. 63-14, Doc. 63-23.)

### III.   QUESTIONS BEFORE THE COURT

1. Whether defendant Koob has met his burden to show that plaintiff failed to exhaust available administrative remedies as required by the PLRA. Yes. The *Martinez* report

along with plaintiff's responses establish that plaintiff failed to timely exhaust available administrative remedies.

2. If the exhaustion issue cannot be resolved at this time, whether Defendant Koob is entitled to summary judgment because there is no dispute as to any material fact and he is entitled to judgment as a matter of law. Yes. A prison official is not deliberately indifferent to a prisoner's serious medical need for an ambulance when the officer performs their gatekeeping function by consulting with medical staff about whether an ambulance is needed.

3. Whether Defendant Koob is entitled to qualified immunity. Yes. Because Defendant Koob did not violate plaintiff's clearly established Constitutional rights, Defendant Koob is entitled to qualified immunity.

4. Whether Defendant Koob is entitled to Eleventh Amendment Immunity. Yes. Defendant Koob is entitled to Eleventh Amendment Immunity for claims brought against him in his official capacity for money damages.

### IV.   ARGUMENT AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Movants bear the initial burden to show there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then the burden shifts to the nonmovant to show that genuine issues of material fact remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569–70 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A. Plaintiff failed to exhaust administrative remedies; the PLRA mandates that judgment be entered against him.

As the court explained in its August 1, 2022 Memorandum and Order (Doc. 82), the PLRA requires an inmate to exhaust all available administrative remedies before filing a federal claim. 42 U.S.C. § 1997e(a).

"Beyond doubt, Congress enacted [the PLRA exhaustion requirement] to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 525 (citing *Booth v. Churner*, 532 U.S. 731, 737 (2001). "In other instances, the internal review might 'filter out some frivolous claims.'" *Id.* "And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* The PLRA's exhaustion requirement is mandatory and does not allow for judicial discretion, "even to take [special circumstances] into account. *Ross v. Blake*, 578 U.S. 632, 639, (2016). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, at 1862.

Initially, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *See Iverson v. Bell*, No. 16-3102-JTM, 2017 WL 4422646, at *2 (D. Kan. Oct. 5. 2017) (explaining that defendant has the initial burden to show administrative remedies were available to plaintiff and plaintiff did not exhaust.)

Courts in this district have found that a defendant satisfies the initial burden to show that a plaintiff failed to exhaust administrative remedies where the defendant provides a Kansas

Department of Corrections ("KDOC") records custodian affidavit that explains that they reviewed the grievance records and found evidence that a plaintiff availed himself of the grievance process but did not complete it. *See Lewis v. Carrell*, No. 12-3112-DDC-JPO, 2014 WL 4450147, at *10 (D. Kan. Sept. 10, 2014) (citing *Sharrock v. Stephens*, No. 10-3210-CM-SAC, 2011 WL 5526444, at * 1 (D. Kan. Nov. 14, 2011) (explaining that where a defendant identified the applicable grievance procedure and attached affidavits from the records custodian stating that the plaintiff did not complete the grievance procedure, defendant satisfied the initial burden to show that administrative remedies were available and plaintiff failed to exhaust them).

As explained in the court's August 1, 2022 Memorandum and Order (Doc. 82), there are two avenues to exhaustion in Kansas. These are found in Kan. Admin Regs. § 44-15-101a (grievances) and § 44-16-104a (personal injury claims). The two avenues are distinct. *Lewis*, 2014 WL 4450147, at *6. Article 15 governs Section 1983 claims. *Id.* at *6–*7.

The KDOC Grievance Procedure for Inmates set forth in Article 15 of Chapter 44 of the Kansas Administrative Regulations requires inmates to follow a four-step process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *See* K.A.R. 44-15-101(b), (d), 44-15-102(a)–(c). Grievances must be filed "within 15 days of the discovery of the event." K.S.A. 44-15-101b.

Personal injury claims pursuant to K.A.R. 44-16-104a must be filed "within 10 calendar days of the claimed personal injury." (explaining that the "requirement that the inmate submit the claim as described . . . shall apply whether or not the inmate pursues a grievance pursuant to article 15 . . . K.A.R. 44-16-104a(c)).

The *Martinez* Report contains an affidavit from Elizabeth K. Smith, an Administrative Specialist at HCF. (SUF 31.) The Smith Affidavit affirms Smith searched all KDOC records at HCF for filings by plaintiff relating to plaintiff asking Defendant Koob to call an ambulance for him. (Id.) Smith affirms that she found no record of any grievance filed by plaintiff for an incident on December 30th or 31st 2019. (Id.) Likewise, Keeton Hartley, the KDOC employee responsible for investigating and processing grievances at LCF, found no grievances filed by plaintiff relating to his medical treatment in December 2019. (SUF 32.)

While it does appear that plaintiff submitted an untimely personal injury claim form in July of 2021 (based on the notary stamps and receipt stamp), this form is insufficient to show that plaintiff exhausted available administrative remedies. (SUF 35–41.) Plaintiff attached no evidence of exhaustion to his pleadings or responses to the *Martinez* Report. While plaintiff's response to the *Martinez* report does include plaintiff's statement that he exhausted administrative remedies, conclusory statements are self-serving and unsupported by the evidence contained in the *Martinez* Report. There is no evidence that plaintiff sought an informal resolution or submitted a grievance or personal injury form to his Unit Team Member ("UTM"), the warden, or the Secretary of Corrections. (SUF 38–41.)

The record (including the *Martinez* Report and plaintiff's responses to the report) establishes that there was a grievance procedure available to Plaintiff, and that he in fact knew how to avail himself of it. (SUF 35–37.) However, there is no evidence that Plaintiff completed the statutorily required steps for exhaustion under either Section 15 or 16. There is no evidence that plaintiff even initiated the grievance procedure set out in § 44-15-101, the regulations setting out the requirements for exhausting that must be completed before filing a Section 1983 claim. Plaintiff appears to have only submitted a personal injury claim form, and he did this long after

the 10-day deadline. (SUF 37.) Even if plaintiff had timely submitted a grievance, there is no evidence that he completed the process of exhausting available remedies by appealing within the statutory time frames to his Unit Team, the warden, or the Secretary of Corrections. Accordingly, judgement should be entered in Defendant Koob's favor and against plaintiff as a matter of law for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(c).

B. Defendant Koob was not deliberately indifferent to plaintiff's serious medical need; Defendant Koob did not prevent plaintiff from receiving treatment or deny him access to medical personnel capable of evaluating treatment needs; summary judgment is appropriate.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

"Prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* (citing *Estelle*, at 106). Courts apply a two-pronged inquiry with objective and subjective components when deciding whether a constitutional deprivation has occurred. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The objective prong requires the alleged deprivation to "be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id.* (quoting *Farmer*, at 834). The subjective prong requires the prison official to "have a 'sufficiently culpable state of mind.'" *Id.* at 1230–31 (quoting *Farmer*, at 834). "[A] prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be

13

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1231 (quoting *Farmer*, at 837). Courts have likened the subjective component to recklessness in criminal law, requiring a person to "consciously disregard a substantial risk of serious harm" *Id.* (quoting *Farmer*, at 837).

The Tenth Circuit has identified two types of conduct constituting deliberate indifference in the context of medical care. First, "a medical professional may fail to treat a serious medical condition properly" but negligence is insufficient for liability in that context. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). The second type, which is applicable to the claim against Defendant Koob, "occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.* This second type is akin to a gatekeeper denying access to medical care. *See Id.* But someone serving this gatekeeper role "may be held liable under the deliberate indifference standard [only] if [he] 'delays or refuses to fulfill that gatekeeper role.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock*, at 1211).

Because plaintiff cannot show that Defendant Koob delayed or failed to fulfill his gatekeeping function, or that Defendant Koob knew about and disregarded a substantial risk of harm to plaintiff's health and safety, summary judgment should be granted for Defendant Koob.

The Tenth Circuit has considered a Section 1983 claim for deliberate indifference based, in part, on a physician's assistant's failure to call an ambulance for an inmate who was suffering heart attack symptoms. *Sealock*, 218 F.3d at 1211. In *Sealock* the court determined that summary judgment was not appropriate because the "subjective component *might* be met where a physician's assistant failed to summon an ambulance despite candidly admitting that, had he known about the inmate's chest pains, he would have done so. . . In that instance, [the court]

14

found disputed evidence as to the assistant's actual knowledge concerning the inmate's chest pains; in other words, the facts supported an inference he knew about the chest pains yet intentionally disregarded his practice of summoning an ambulance." *Self*, 439 F.3d at 1231 (discussing *Sealock*, at 1211–12) (emphasis in original).

Here, the facts are sufficiently distinguishable from *Sealock* that summary judgment is appropriate. Defendant Koob affirmed that, although he has the authority to call an ambulance, when circumstances permit, it is his practice to defer to medical providers' decisions about whether calling an ambulance is necessary. (SUF 22.) This practice makes sense. One can imagine that circumstances arise in a prison setting where a prison official might obviously need to call an ambulance and when medical staff are not available to make the call. Staff or an inmate may sustain trauma using a tool in a workshop, or in the kitchen, for example.

Here, plaintiff was and had been in the infirmary receiving treatment for hours—at least from 7:45p.m. until 2:00a.m. (SUF 9, 19.) Defendant Koob affirmed that after plaintiff requested that an ambulance be called, Defendant Koob would have spoken to Corizon medical staff about whether calling an ambulance was necessary. (SUF 22.) It is not reasonable to require prison staff to override medical professionals' determinations about medical matters. Plaintiff had already been administered a Troponin test, and a doctor determined his results to be normal. (SUF 11, 12, 13.) Medical staff had been attempting to provide plaintiff treatment for hours, although plaintiff had not always cooperated with those attempts. (SUF 10–17.) Defendant Koob affirmed that due to plaintiff's cell's proximity to the nursing station, he was sure medical staff was aware of plaintiff's circumstances, but that he would have consulted medical staff regardless. (SUF, 22–23.) The medical staff at HCF was well informed of plaintiff's medical condition and history, had performed the appropriate testing, and administered medical care.

15

(SUF 4, 6–17.) None of these circumstances suggest that Defendant Koob delayed in serving his gatekeeping function—Defendant Koob affirmed that he consulted medical staff regarding plaintiff's request. (SUF 22.) Nor do the facts suggest that Defendant Koob prevented plaintiff from receiving treatment or that Defendant Koob denied plaintiff access to medical personnel capable of evaluating his need for treatment. Plaintiff had been and was continuing to receive appropriate medical treatment from professional medical staff, who were all capable of evaluating plaintiff's need for further or additional treatment and were doing so on an ongoing basis. (SUF 6–17.)

Additionally, "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Mata*, 427 F.3d at 754 (quoting *Sealock*, at 1210). Here, the record establishes that Defendant Koob's interaction with plaintiff occurred around 2 a.m. on December 31st. (SUF 19.) By 3:00 a.m. plaintiff had calmed down and appeared to be sleeping restfully. (SUF 25.) By 4:30 a.m. plaintiff refused breakfast and morning medications. (SUF 26.) By 7:45 a.m. plaintiff had resumed yelling he had chest pains and telling medical staff to "Get the hell outta here" when they entered his cell to assess him. (SUF 27–28.) By 9:15 a.m. when Dr. Monir checked on plaintiff, plaintiff was still very upset, cursing at and threatening the officers and nurse present . . . denied chest pain, shortness of breath, syncope, dizziness, or diaphoresis . . . had regular [heart rate] and rhythm. No carotid brit or jugular vein distention . . . No edema in his extremities . . .[his] electrocardiography showed no acute findings . . . troponin levels were within normal limits . . ." And plaintiff was then discharged from the infirmary and sent back to his living area. (SUF 29–30.) Accordingly, the records do not suggest that plaintiff suffered any delay in medical care, or that any delay resulted in substantial harm.

The Tenth Circuit has explained that where a prison official fulfills their gatekeeping role by "communicating the inmate's symptoms to a higher-up" the official is not deliberately indifferent to an inmate's serious medical needs. *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1181 (10th Cir. 2020) (explaining that where a nurse informed a doctor of the patient's condition, she fulfilled her gatekeeping role)).

Here, the parties agree that plaintiff asked Defendant Koob to call an ambulance. (SUF 20.) Defendant Koob consulted with medical staff in the infirmary where plaintiff was being housed and monitored and where plaintiff was receiving care, to the extent plaintiff would accept care. (SUF 22.) Defendant Koob's consultation with medical staff in the infirmary was consistent with KDOC HCF General Orders, which instruct KDOC employees to contact and defer to medical providers when an inmate needs emergent medical care. (SUF 23.) Defendant Koob fulfilled his gatekeeping function and is therefore entitled to summary judgment as a matter of law.

C. Defendant Koob is entitled to qualified immunity because he did not violate plaintiff's clearly established constitutional rights

"The doctrine of qualified immunity shields government officials from liability where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Beuford v. Mesa Cnty., Co.*, 35 F.4th 1238, 1261 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must demonstrate on the facts alleged that (1) the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct." *Id.* (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)). If plaintiff

17

can meet this two-part burden, the defendant must show that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *Id.*

Without addressing whether the Constitutional right at issue in this case was clearly established, and without assuming plaintiff's burden to establish both prongs of the test, for all the reasons discussed above, Defendant Koob did not violate plaintiff's constitutional right to be free from cruel and unusual punishment. Plaintiff was receiving medical care and was housed in the infirmary across from the nurse's station when plaintiff asked Defendant Koob to call him an ambulance. (SUF 9–20.) Defendant Koob fulfilled his gatekeeping function by discussing the need for calling an ambulance with medical staff. (SUF 22.) Because Defendant Koob was not deliberately indifferent to plaintiff's serious medical need, there was no constitutional violation, and Defendant Koob is entitled to qualified immunity. Summary judgment is additionally appropriate for this reason.

D.  Defendant Koob is entitled to Eleventh Amendment Immunity

Plaintiff states that Defendant Koob was a "KDOC employee[] at HCF" and that Defendant Koob visited plaintiff in the HCF infirmary with other KDOC staff. (SUF 18, Doc. 43-3, at pp. 7, 13.) It is reasonable to conclude, therefore, that Defendant Koob is being sued in his official capacity. To the extent that plaintiff seeks money damages against Defendant Koob in his official capacity, Defendant Koob is entitled to Eleventh Amendment Immunity. *Winter v. Mansfield*, No. 19-3236-HLT-TJJ, 2021 WL 4354617, at *2 (D. Kan. Aug. 27, 2021) (citing *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012)); *Payne v. McKune*, No. 06-3010-JWL, 2007 WL 60941, at *1–2 (D. Kan. 2007)). Plaintiff's prayer for relief (Doc. 43-3, at p. 5) includes court costs, fees, costs of litigation, compensatory damages, punitive damages, nominal damages, and "injunctive relief to be determined" among other things. Plaintiff is not entitled to

monetary damages against Defendant Koob in his official capacity, and plaintiff is not seeking any known injunctive relief against Defendant Koob. Accordingly, plaintiff's claims against Defendant Koob should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. *See Downard v. Schmidt*, No. 21-2030-JAR-ADM, 2021 WL 5038767, at *4 (D. Kan. Oct. 29, 2021).

Defendant Koob reserves the right to assert additional affirmative defenses or other defense theories if the case against him proceeds past this briefing.

## V. CONCLUSION

Because plaintiff failed to exhaust available administrative remedies, Defendant Todd Koob respectfully requests that the Court grant judgment in his favor and against plaintiff. Should the court reach the merits of plaintiff's constitutional claims, Defendant Koob requests that the court enter judgment in his favor and against plaintiff because there is no genuine issue as to any material fact. Plaintiff asked Defendant Koob to call him an ambulance, and instead of doing so, Defendant Koob discharged his gatekeeping function by discussing the need to call an ambulance with medical staff and deferring to medical providers' decision that calling an ambulance was not appropriate. And the law establishes that a prison official is not deliberately indifferent to a prisoner's serious medical need when they communicate an inmate's symptoms to medical staff. Here, plaintiff was already in the infirmary under the medical supervision of Corizon medical providers. Defendant Koob did not delay plaintiff's medical care or deny him access to care and treatment. Accordingly, Defendant Koob is entitled to judgment as a matter of law. Additionally, Defendant Koob is entitled to qualified immunity because he did not violate plaintiff's clearly established constitutional rights, and Defendant Koob is entitled to Eleventh Amendment Immunity to the extent plaintiff seeks money damages from Defendant Koob in his

official capacity. For all these reasons, Defendant Koob seeks either dismissal of the claim against him, or judgment in his favor and against plaintiff.

Respectfully submitted,
STEVENS & BRAND LLP

By: s/ Kate M. Simpson
Kate M. Simpson, KS #26453
900 Massachusetts Street, Suite 500
Lawrence, KS 66044
785-843-0811- Phone
785-843-0341 - Fax
ksimpson@stevensbrand.com
*Counsel for Defendant Todd Koob*

### CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court via the CM/ECF e-filing system, and a copy sent via first class mail, postage prepaid, to:

Patrick C. Lynn
64377
EL DORADO Correctional Facility-Central
PO Box 311
El Dorado, KS 67042

/s/ Kate M. Simpson
Kate M. Simpson