IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICK C. LYNN,

     Plaintiff,

     v.

CHARLIE WILLNAUER, et al.,

     Defendants.

Case No. 5:19-cv-03117-HLT

## MEMORANDUM AND ORDER

Defendant Todd Koob moves for summary judgment or dismissal (Doc. 104). Plaintiff has filed responses (Docs. 134, 138 and 143),[1] Defendant Koob has filed a reply (Doc. 147), and the motion is ripe for decision. Defendant's motion is granted for the reasons stated herein.

## I.   PROCEDURAL HISTORY

Plaintiff, Patrick C. Lynn, brings this pro se prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis.[2] The Court screened Plaintiff's First Amended Complaint (Doc. 43–3) ("FAC") and entered a Memorandum and Order (Doc. 45) ("M&O") dismissing various claims and defendants set forth in the FAC. Plaintiff's remaining claims relate to his medical care: on May 25, 2019 at the Lansing Correctional Facility ("LCF"); on June 26-28, 2019 at LCF; on December 30-31, 2019 at the Hutchinson Correctional Facility ("HCF"); and on December 23, 2020 at LCF. Plaintiff's only

---

[1] The Court recognizes Plaintiff's pro se status and liberally construes his filings but will not become his advocate.

[2] Doc. 28.

claim against Defendant Koob is the claim regarding Plaintiff's medical care at HCF on December 30-31, 2019.[3]

On October 31, 2022, Defendant Koob filed a Motion for Summary Judgment/to Dismiss (104) and Memorandum in Support (Doc. 105). Because Defendant relies on additional evidentiary materials relating to the claim, the motion will be construed as a motion for summary judgment under Fed. R. Civ. P. 56. As required by Local Rule 56.1(d), Defendant provided Plaintiff, who is proceeding pro se, with the required notice (Doc. 106) regarding motions for summary judgment.[4] Local Rule 56.1(b) provides that:

> **b) Opposing Brief.**
>
> (1) A brief in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.
>
> (2) If the party opposing summary judgment relies on any facts not contained in movant's brief, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will

---

[3] Plaintiff claims in his FAC:

On 12-30-19, while at HCF, I suffered severe heart attack symptoms & was placed into the HCF Infirmary & a Traponin [sic] sample taken & was claimed by HCF Infirmary Nurses Denton & Dickinson to have tested to be 0.007 which I knew was absurd in the face of having a sky-high racing B/P & the same symptoms as cited in #6 above. And from 6pm to 10:30am on 12-31-19, I was denied heart meds, pain meds, & even having my B/P reassessed or another Traponin [sic] sample taken due to those Nurses maliciously deliberate indifference. And at around 2am/12-31-19 Capt. Koob came into my Infirmary Rm. w/several security staff as I declared having a heart attack & denied being assessed & I pleaded w/him to invoke his authority to independently call EMS & he was fully aware of my renowned atrocious heart condition & himself having a heart condition, & Koob/along w/the other security staff all present, refused to independently call EMS to get me to a hospital & refused to even direct those Nurses to assess me.

Doc. 43–3, at 13.

[4] The notice attaches Fed. R. Civ. P. 56 and D. Kan. Rule 56.1, and provides that: "you may not oppose summary judgment simply by relying upon the allegations in your complaint" and "[i]f you do not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant, the court may accept defendant's facts as true, in which event your case may be dismissed and judgment entered in defendant's favor without a trial." D. Kan. Rule 56.1 (d); *see* Doc. 106.

be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.[5]

Plaintiff has filed a response that he titles a "First Response" (Doc. 134), an additional response (Doc. 138), and Plaintiff's Supplement & Clarifications to Doc. 138 (Doc. 143). Plaintiff's consolidated responses address both of the pending dispositive motions and fail to specifically controvert Defendant Koob's statement of material facts.[6] *See* D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."); Fed. R. Civ. P. 56(c)(1) and (e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . ..").

---

[5] D. Kan. Rule 56.1 (b).

[6] The Court notes that Plaintiff has been aware that exhaustion was an issue and has had ample time to respond regarding the issue. The Court's August 1, 2022 Memorandum and Order found that there was merit to the claim that Plaintiff failed to exhaust his administrative remedies. Doc. 82, at 6. Plaintiff has also been granted multiple extensions of time to respond to the dispositive motions. In fact, despite being allowed to proceed in forma pauperis as a three-striker based on "imminent danger," he has sought stays and extensions throughout this case. *See, e.g.,* Doc. 29, filed September 16, 2020 (Plaintiff's Motion for 60 Days Temporary Stay of All Proceedings); Doc. 32, filed October 29, 2020 (Plaintiff's Motion for Final 10 Days Time Extension to File Amended Complaint); Doc. 36, filed November 16, 2020 (Plaintiff's Sworn Motion for Referral to US Atty Ofc for Prosecution & for 60 Days Temporary Stay); Doc. 46, filed April 21, 2021 (Plaintiff's Motion for Stay of Martinez Report Order); Doc. 70, filed November 18, 2021 (Plaintiff's Motion for Orders, seeking a 30-day extension of time to respond to the Martinez Report); Doc. 72, filed January 5, 2022 (Plaintiff's Motion for Additional Time Extension of 60 Days); Doc. 78, filed March 3, 2022 and subsequently stricken as an unauthorized filing (Plaintiff's Motion for Additional 30 Days Time Extension Due to Extenuating Circumstances); Doc. 112, filed November 8, 2022 (Plaintiff's Motion for 30 Days Time Extension); Doc. 123, filed December 16, 2022 (Plaintiff's Motion for 60 Days Additional Time Extension); Doc. 126, filed February 15, 2023 (Plaintiff's Good Faith Motion for an Additional 30 Days Time Extension); Doc. 128, filed March 15, 2023 (Plaintiff's Verified Motion for an Additional Ten Days Time Extension); Doc. 130, filed April 4, 2023 (Plaintiff's Good Faith Sworn Motion for an Additional Time Extension); Doc. 132, filed April 14, 2023 (Plaintiff's Sworn Motion Requesting the Court to Grant the 8 Days "Stolen" From Time the EFN (Doc. 131) Sent & Date/Time Received); Doc. 135, filed April 17, 2023 (Plaintiff's Request for Orders, seeking additional time to respond); Doc. 137, filed April 24, 2023 (Plaintiff's Request for Extension).

## II.    UNCONTROVERTED FACTS

*Plaintiff's medical history and treatment in the HCF infirmary in December 2019*

1. At all times relevant to Plaintiff's First Amended Complaint, Plaintiff was an inmate in KDOC custody. (Doc. 43-3, at 1.)

2. Plaintiff is currently housed at El Dorado Correctional Facility ("EDCF"). (Sept. 1, 2021, Docket Annotation.)

3. On December 28, 2019, Plaintiff had also been housed at EDCF, but was transferred to Hutchinson Correctional Facility ("HCF). (Doc. 63-3, at ¶ 8.)

4. Debra Lundry, the Health Services Administrator at HCF, "conducted a chart audit . . . and notified the HCF staff of Mr. Lynn's medical orders." (Doc. 63-3, at ¶¶ 2, 4, 8.)

5. Among other things, Plaintiff's medical history includes: "severe coronary artery disease, Chronic Angina (chest pain)" and Plaintiff underwent a quadruple bypass surgery in 2014. (Doc. 43-3 at 2, ¶ 2; Doc. 63, at 9.)

6. Medical staff at HCF affirmed that Plaintiff has a history of refusing to take his prescribed medication. (Doc. 63-3, at ¶ 7; 63-38, at ¶ 11.)

7. When Plaintiff arrived at HCF on December 29, 2019, he saw Nurse Ostrom, who "explained that HCF was continuing [Plaintiff's] care plan as it existed previously at EDCF and LCF. [Plaintiff] threatened to sue Nurse Ostrom and report Nurse Ostrom to the Board of Healing Arts for not making all of [Plaintiff's] medications [keep on person] KOP . . . ." This was something the nurse was not authorized to change. (Doc. 63-3, at ¶ 9.)

8. On December 29, 2019, Plaintiff visited the infirmary due to heart palpitations and shortness of breath, but he was released to his housing unit in stable condition after his symptoms decreased. (Doc. 63-3, at ¶ 10.)

9. On December 30, 2019, Plaintiff returned to the HCF infirmary reporting that he had chest pains; Plaintiff had taken three nitroglycerin tablets before arriving at the clinic; he was admitted to the HCF infirmary at 7:45 p.m. (Doc. 63-3, at ¶ 11; Doc. 63-10 at ¶¶ 2–3; Doc. 43-3, at p. 13, ¶ 19 ("while at HCF, I suffered severe heart attack symptoms & was placed into the HCF Infirmary"); Doc. 63-38, at ¶ 11.)

10. Medical staff at HCF affirmed that they "attempted to examine Mr. Lynn with an EKG but were unable to [do so] due to Mr. Lynn's uncooperativeness. Mr. Lynn would not stop tapping on his chest and moving his arms around which ultimately impaired the test results." (Doc. 63-3, at ¶ 11.)

11. Medical staff at HCF affirmed that the on-call physician ordered a stat Troponin test, and that Plaintiff remained in the infirmary to await the test results; Plaintiff had to be transported via wheelchair due to reported shortness of breath, but he "was observed to be continuously yelling at HCF correctional staff without . . . having impaired breathing at the time." (Doc. 63-3, at ¶ 12; Doc. 43-3, at p. 13, ¶ 19.)

12. Plaintiff's lab results came back with a Troponin level of 0.075 ng/ml, which the on-call physician determined was within normal limits for Plaintiff. (Doc. 63-3, at ¶ 13; Doc. 63-38, at ¶ 11; Doc. 43-3, at p. 13, ¶ 19.)

13. The on-call doctor decided that Plaintiff should not be admitted to a hospital because his Troponin levels were normal for Plaintiff. (Doc. 63-8, ¶ 10.)

14. While in the medical clinic at HCF, Plaintiff was under the supervision of medical staff and was "in a clinic isolation cell directly across from the nurse's station." (Doc. 63-10, at ¶ 3; Doc. 63-12, at ¶ 3.)

15. In the evening on December 30, 2019, Plaintiff was evaluated by nurse Barbara Dickerson. (Doc. 63-8, at ¶¶ 2, 5, 8.)

16. Nurse Dickerson measured Plaintiff's vitals, including his blood pressure, pulse, and breathing respirations. (Doc. 63-8, at ¶ 8.)

17. Medical staff reported, and video footage demonstrates, that Plaintiff was uncooperative, jumped off his bed screaming at staff, threatening them and their families, and that Plaintiff did not appear to suffer from shortness of breath. (Doc. 63-3, at ¶ 14; Doc. 63-4; Doc. 63-8, at ¶ 9. "Mr. Lynn was verbally abusive to [Nurse Dickerson] yelling that [she] was a 'stupid nurse,' a 'dumb bitch,' and that he would 'have [staffs'] asses and kill [them].'" (emphasis in original); Doc. 63-10, at ¶ 3; Doc. 63-38, at ¶ 11.)

*Defendant Koob's limited interaction with Plaintiff on December 31, 2019*

18. At all times relevant to Plaintiff's First Amended Complaint, Defendant Koob was employed by the KDOC at the Hutchinson Correctional Facility ("HCF"). (Doc. 63-10.)

19. Around 2:00 a.m. on December 31, 2019, Defendant Koob checked on Plaintiff in his infirmary cell. (Doc. 63-10, at ¶ 4; Doc. 43-3, at p. 13, ¶ 19.)

20. Plaintiff asked Defendant Koob to call an ambulance for him. (Doc. 63-10, at ¶ 4; Doc. 43-3, at p. 13, ¶ 19.)

21. Defendant Koob did not call an ambulance. (Doc. 63-10, at ¶ 4; Doc. 43-3, at p. 13, ¶ 19.)

22. Defendant Koob affirmed that he "would have spoken to the medical staff about whether it would be necessary to . . . call an ambulance . . . [he] generally leave[s] that decision up to the medically trained contract healthcare provider who, at the time, was Corizon" (Doc. 63-10, at ¶ 4) and "would have spoken to the medical staff about whether it would be necessary to . . .

call an ambulance. Because of the proximity of [Plaintiff] to the nurse's station and because of all the noise he was making, [Defendant Koob was] certain they were well aware of Mr. Lynn's complaints and requests." (Doc. 63-10, at ¶ 5.)

23. Defendant Koob's decision to consult medical staff and defer to their decisions regarding medical care and treatment are consistent with KDOC HCF General Orders. (Doc. 63-28, at p. 4, "The need for transfer and the means of transportation to higher levels of care in appropriate medical facilities shall be determined by the attending physician in charge of the case." "It shall be the responsibility of the senior medical officer at the emergency site, or in that officer's absence, that of the senior security officer, to make immediate arrangements for advising the hospital emergency room of any planned patient transfer to that facility as soon as it is determined that such a transfer is medically advised."; Doc. 63-29, at p. 2 "A. Emergency Services: 1. Access to health care personnel in the event of an emergency situation shall be through corrections staff personnel. a. When health care staff are on-site, calls should be directed to the clinic for directions."; Doc. 63-30, at p. 2 "Any employee who has reason to believe an offender is in need of emergency care shall immediately notify the medical staff".)

24. Defendant Koob also affirmed that he has "known Mr. Lynn for many years. For that time, he has consistently been loud, disruptive, complaining and demanding if he didn't get his way. The behavior on that night is consistent with his long-time behavior. He often times works himself into a rage and maintains it for a length of time, as was the case on the early morning of December 31, 2019." (Doc. 63-10, at ¶ 8.)

25. Around 3:00 a.m., Plaintiff calmed down and appeared to be sleeping restfully. (Doc. 63-8, at ¶ 10.)

7

26. At 4:30 a.m., Plaintiff refused breakfast and his morning medications. (Doc. 63-38, at ¶ 12).

27. At 7:45 a.m., Plaintiff yelled that he had chest pain, but when a nurse and two officers entered his cell, he told them to "Get the hell outta here." (Doc. 63-38, at ¶ 13.)

28. At 8:15 a.m., Plaintiff refused to allow medical staff to measure his vitals. (Doc. 63-38, at ¶ 16.)

29. At 9:15 a.m., Dr. Monir checked on Plaintiff when he made his rounds at the infirmary and noted: "during which time Mr. Lynn was still very upset, cursing at and threatening the officers and nurse present. Patient denied chest pain, shortness of breath, syncope, dizziness, or diaphoresis. I encouraged Mr. Lynn to calm down because such events could elevate his blood pressure and heart rate. Mr. Lynn was examined. His heart had regular rate and rhythm. No carotid bruit or jugular vein distention were present. No edema in his extremities was observed. Mr. Lynn's electrocardiography showed no acute findings. I noted that troponin levels were within normal limits for the patient. Ultimately, I was able to calm Mr. Lynn down and told him that he should return to the infirmary should his symptoms persist or worsen and encouraged him to take his medications as prescribed. Mr. Lynn was appropriately alert and oriented. Mr. Lynn stated that he understood my directions." (Doc. 63-3, at ¶ 15, Doc. 43-3, at p. 13, ¶ 20; Doc. 63-38, at ¶ 18.)

30. Plaintiff "returned to his living area without any sign of acute distress at or around 7:11 p.m. on December 31, 2019." (Doc. 63-38, at ¶ 19.)

*Plaintiff's failure to exhaust administrative remedies*

31. Elizabeth K. Smith, an Administrative Specialist at HCF, and a KDOC records custodian affirmed that she "searched the record for any grievances filed by Patrick Lynn . . . regarding the failure of Todd Koob to call an ambulance for him . . . on December 30 and 31, 2019

. . . [and] found no grievances from Mr. Lynn for that time frame for such a complaint." (Doc. 63-14, at ¶ 3.)

32. Keeton Hartley, the KDOC employee responsible for investigating and processing grievances at Lansing Correctional Facility ("LCF") "examined the files for grievances filed by Patrick Lynn . . . concerning his issues with his medical treatment for the [relevant] timeframe and found none." (Doc. 63-23, at ¶¶ 1, 3.)

33. Plaintiff did not file a grievance regarding Defendant Koob's refusal to call Plaintiff an ambulance on December 31, 2019, within 15 days as required by K.A.R. 44-15-101b and K.S.A. 75-52,138 (Doc. 63-14, Doc. 63-23.)

34. When an inmate claims they are injured while in KDOC custody, they are required to file a personal injury claim within 10 days of the claimed personal injury. K.A.R. 44-16-104a; Plaintiff did not file a personal injury claim within 10 days of his December 30-31, 2019 injury as required by K.A.R. 44-16-104a(a) and K.S.A.75-52,138. (Doc. 63-14, Doc. 63-23.)

35. It appears that Plaintiff filed a personal injury claim form that he dated March 10, 2020, although that form states that the injury occurred on December 31, 2020. (Doc. 63-36 "around 2am-3am of 12-31-19, Capt. Koob came into Inf. Rm. . . . I pleaded w/him to exercise his independent authority to call EMS to assess me & take me to a hospital . . . .".) (Doc. 63-36.)

36. In Plaintiff's March, 10, 2020 form, Plaintiff states "I previously submitted this claim . . . it too corruptly disappeared." (Doc. 63-36.)

37. KDOC records indicate that the March 10, 2020 form was received on July 27, 2020 by DOC Management Area and was forwarded to El Dorado Correctional Facility ("EDCF") on September 2, 2020. (Doc. 63-36; 63-37.)

38. Plaintiff did not seek an informal resolution of his claim with KDOC personnel. (Doc. 63-14, Doc. 63-23.)

39. Plaintiff did not timely file a grievance report form or personal injury form to his Unit Team. (Doc. 63-14, Doc. 63-23.)

40. Plaintiff did not submit a grievance or personal injury claim to the warden. (Doc. 63-14, Doc. 63-23.)

41. Plaintiff did not submit a grievance or personal injury claim to the Secretary of Corrections. (Doc. 63-14, Doc. 63-23.)

## III.   LEGAL STANDARDS

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.[7]  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law" and is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]  The Court views all evidence and draws all reasonable inferences in the light most favorable to the party opposing summary judgment.[9]  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[10]

## IV.   ANALYSIS

### 1. Exhaustion

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all

---

[7] Fed. R. Civ. P. 56(a) and (c).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

[9] *Pinkerton v. Colorado Dep't. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (citation omitted).

[10] *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).

available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).[11] "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."[12]

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."[13] An inmate exhausts by complying with "an agency's deadlines and other critical procedural rules."[14] A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein.[15] "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies."[16] "The level of detail necessary in a grievance to comply with the

---

[11] *See also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).

[12] *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

[13] *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249; *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (quoting *Jones*, 549 U.S. at 211)).

[14] *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

[15] *Little*, 607 F.3d at 1249 (citing *Woodford*, 548 U.S. at 90).

[16] *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[17]

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies.[18] The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit.[19]

For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis.[20] If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections.[21] The procedure to follow at each level is described in detail in the Kansas Administrative Regulations.[22]

As this Court has previously found, there are two distinct avenues of administrative exhaustion established in Kansas law:

> The first avenue is found in the regulations codified by Article 15 of chapter 44 of the Kansas Administrative Regulations. These regulations govern inmate grievances covering "a broad range of matters that directly affect the inmate, including" complaints about policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility. Kan. Admin. Regs. § 44–15–101a(d)(1)(A)–(B). As the Court previously

---

[17] *Jones*, 549 U.S. at 218.

[18] *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

[19] *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

[20] K.A.R. § 44–15–101(b).

[21] K.A.R. § 44–15–101(d).

[22] § 44–15–102; *see also Garza v. Correct Care Solutions*, 2011 WL 2580299, at *2 (D. Kan. 2011), *aff'd* 451 F. App'x 775 (10th Cir.) (granting summary judgment for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that he sought relief on his claims first through his unit team, then the warden, and finally from the Secretary of Corrections).

determined, this regulation applies to a constitutional claim such as the one asserted here, where the conduct complained of stems from "actions by employees" of the prison facility. *Id*. § 44–15–101a(d)(1)(B).[23]

 "The second avenue is governed by the regulations in Article 16 of chapter 44 of the Kansas Administrative Regulations."[24] Kan. Admin. Regs. § 44–16–104a applies to claims for personal injury and provides: "(a) Each inmate claim for personal injury shall be submitted to the [prison] facility and [the] secretary of corrections within 10 calendar days of the claimed personal injury."[25]

The Kansas Court of Appeals has explained that the two sets of regulations found in Articles 15 and 16 are "separate and distinct" from one another.[26] Indeed, the regulation "expressly provides: 'The grievance procedure [in article 15] shall not be used in any way as a substitute for, or as part of, the  . . . property loss or personal injury claims procedure [in Article 16] . . .'"[27]

The Court in *Conley* addressed defendants' argument that plaintiff failed to file a personal injury claim in a § 1983 case, and noted that while case law establishes that exhaustion of Article 15's procedures alone is not sufficient for a plaintiff to assert a personal injury claim, the Court "had not located any authority requiring an inmate to exhaust both the requirements of Article 15 and Article 16 before asserting a § 1983 claim based on an alleged violation of an inmate's constitutional rights" and declined to invent such a requirement.[28] However, the Court did find that exhaustion under § 44–15–101 was necessary for plaintiff's § 1983 claim.[29] The Court

---

[23] *Lewis v. Carrell*, 2015 WL 413640, at *2–3 (D. Kan. 2015).

[24] *Id*. at *3.

[25] *Id*. (citing Kan. Admin. Regs. § 44–16–104a).
[26] *Id*. (citing *Redford v. Kan. ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL 781102, at *6 (Kan. Ct. App. Mar. 1, 2013 (unpublished table decision)).

[27] *Id*. (quoting Kan. Admin. Regs. § 44–15–101a(d)(2); *see also Sharrock v. Stephens*, 2011 WL 5526444, at *1 (D. Kan. 2011) ("Importantly, the requirements in [§ 44–16–104a] apply regardless of whether the inmate pursues a grievance pursuant to § 44–15–101.").

[28] *Conley v. Pryor*, 2015 WL 413638, at *14 (D. Kan. 2015).

[29] *Id*.

found that where plaintiff asserted a § 1983 claim for failure to provide proper dental care, plaintiff's claim constituted a complaint about the conditions of his imprisonment and the actions of employees, which requires exhaustion under Kan. Admin. Regs. § 44–15–101.[30] Likewise, the Court in *Nunez*, stated that "an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act."[31] The Court held that "Article 15 of the KDOC regulations covers the administrative procedures that must proceed a § 1983 claim."[32] The Tenth Circuit has upheld the requirement that a plaintiff must comply with the requirements of § 44-15-101 prior to filing a § 1983 case, regardless of an attempt to comply with the requirements of § 44-16-104a.[33]

Despite the notice he received cautioning him that he cannot rely on his allegations in his FAC, Plaintiff responds to the motion for summary judgment by arguing that the Court should consider the allegations in his FAC.[34] Plaintiff's response sets forth various irrelevant arguments and accusations and alleges that Defendants and defense counsel are not credible. However, Plaintiff does not directly controvert Defendant Koob's Statement of Uncontroverted Material Facts.[35]

---

[30] *Id.*

[31] *Nunez v. Heimgartner*, 2017 WL 2264466, at *5 (D. Kan. 2017) (citation omitted).

[32] *Id.* at *6 (citation omitted); *see also Jones v. Parks*, No. 19-cv-3175-HLT-GEB, Doc. 50 at n.3 (D. Kan. April 13, 2021) ("Plaintiff's alleged personal injury claims based off the same incidents does not exhaust his § 1983 claim.").

[33] *See Lynn v. Kelly*, 2022 WL 1043752, at *1 (10th Cir. 2022) (unpublished) ("Mr. Lynn may have attempted to comply with the distinct requirements of § 44-16-104a, but he wholly ignored the requirements of § 44-15-101. . . . As Mr. Lynn failed to comply with the established grievance process, summary judgment was proper."); *Kidd v. Baker*, 2022 WL 17485932, at *5–6 (D. Kan. 2022) (describing the dual-track system of administrative exhaustion set out in Kansas law), *affirmed* 2023 WL 2396530 (10th Cir. 2023).

[34] Doc. 134, at 1–2; Doc. 138.  Plaintiff also sought discovery, sought the appointment of counsel, claimed he did not receive Exhibit 32 to the *Martinez* Report, sought to have a polygraph test, and  sought leave to file a second amended complaint. Doc. 135.  These requests were denied in the Court's April 19, 2023 Order at Doc. 136.

[35] Doc. 105, at 2–8.

Regarding exhaustion, Plaintiff states that he exhausted his administrative remedies because "it would be patently out of character for me not to have pursued <u>every available tenant of KDOC admin. remedies</u> (KAR 44-15-101 et seq., 44-15-106, KAR 44-15-201, KAR 44-16-104(a) & 44-16-105, & IMPP 01-118 strictures too[)]."[36] Plaintiff also concludes that he has exhausted his administrative remedies because "that's a no brainer & prison officials & medical officials confiscated my documentations at every level & simply don't respond. It's a systemic dead-end."[37] However, Plaintiff has submitted copies of grievances relating to other claims, but he has not submitted grievances showing he exhausted his administrative remedies regarding his claim against Defendant Koob.[38]

Plaintiff has submitted copies of multiple grievances he filed relating to his property/injury claims.[39] Most of these grievances deals with Plaintiff's property, and only one relates to his

---

[36] Doc. 134, at 6; *see also* Doc. 143, at 2 (stating "I've become a renowned litigator & I am reasonably intelligent—I f'n know how to exhaust all available admin. remedies".). Plaintiff argues that it would be patently out of character for him not to pursue every available tenant of the KDOC administrative remedies. Plaintiff's request for relief in his original Complaint seeks, among other relief, "a waiver of pursuing (future, predetermined) admin. remedies." Doc. 1, at 6. About six months prior to filing this case, Plaintiff filed another case in this Court regarding his conditions at EDCF. *See Lynn v. Cline*, Case No. 19-3003-EFM-KGG (D. Kan.) (filed January 4, 2019).  On May 25, 2021, the Court entered a Memorandum and Order (Doc. 135) granting summary judgment to defendants based on Plaintiff's failure to exhaust his administrative remedies. *See Lynn v. Cline*, Case No. 19-3003-EFM, 2021 WL 2104981 (D. Kan. May 25, 2021), *aff'd* 2022 WL 1043753 (10th Cir. April 7, 2022).

In opposing summary judgment in Case No. 19-3003, Plaintiff argued that both available administrative remedies—KAR 44-15-101 and KAR 44-16-104a—are "copecetic [sic] to each other as to clearly notify[ ] prison authorities of an actionable wrong." *Id.* at Doc. 129–1, at 2 (filed April 8, 2021). Plaintiff claimed that "the <u>only</u> available proper admin. remedy was a personal injury claim per KAR 44-16-104a" and that "[a] reasonable person would interpret KAR 44-16-104a as the <u>only</u> proper available admin. remedy & utilize the Personal Injury Claim form . . . to exhaust his money damages claim." *Id.* at 2–3. The Court held that "Plaintiff's personal injury claims were insufficient to properly exhaust his § 1983 claims." *Lynn*, 2021 WL 2104981, at *5.

As of Plaintiff's April 8, 2021 filings in Case No. 19-3003, he was maintaining the position that exhaustion under KAR 44-16-104a is the only path to exhausting administrative remedies. Plaintiff filed the instant case on July 19, 2019 and filed his FAC on February 8, 2021. Therefore, Plaintiff was maintaining this position after he filed his Complaint and his FAC in this case.

[37] Doc. 138, at 6 (claiming the KDOC "cherry-picks" which grievances to respond to on any level).

[38] Plaintiff's arguments regarding Exhibits 33 and 34 to the *Martinez* Report relate to his claims at LCF, and are not related to his claims against Defendant Koob for his medical care at HCF.  *See* Doc. 134, at 6.

[39] *See, e.g.*, Doc. 148–1, at 11–12, 47–56, 61.

medical care. His Property Damage/Loss or Personal Injury Claim Form submitted on July 5, 2019, lists the date of injury as June 27, 2019, at LCF.[40] This is not material to his claims against Defendant Koob for medical care at HCF in December 2019.[41]

Plaintiff also attaches a copy of his complaint to the Kansas State Board of Nursing against nurses that are not defendants in this case and relating to an incident on November 10, 2022, at EDCF, which is not an issue in this case.[42] Plaintiff also attaches copies of his grievances regarding this incident.[43] Plaintiff also attaches his grievances regarding his medical care on November 19, 2022, at EDCF.[44] The medical providers involved are not defendants in this case and the medical issues are unrelated to the issues in this case.[45] The Court notes that Plaintiff attaches two letters to state court judges, a letter to the Leavenworth County Sheriff, and a letter to the Wyandotte County Sheriff, seeking to institute criminal charges against staff, but none of these letters are proper avenues for exhaustion.[46] Plaintiff also attaches the warden's response to grievances he filed in May 2020, regarding Plaintiff's KOP medication and his property claim with EDCF.[47]

While it does appear that Plaintiff submitted an untimely personal injury claim form in March 2020, this form is insufficient to show that Plaintiff exhausted available administrative

---

[40] Doc. 148–1, at 51–53; Doc. 63–33.

[41] Plaintiff addresses this LCF property/injury claim form in his response. *See* Doc. 134, at 6 (referencing Exhibit 33 to the *Martinez* Report). He also addresses another property/injury claim regarding an incident occurring as he was transported to the KU Hospital emergency room on December 17, 2020, which is likewise not an issue in this case. *Id.* (referencing Exhibit 34 of the *Martinez* Report and the disciplinary reports he received in connection with the incident).

[42] Doc. 148–1, at 16–19; Doc. 138–1, at 7–10.

[43] Doc. 148–1, at 21–29, 31–32; Doc. 138–1, at 11–19, 21–22.

[44] *See* Doc. 148–1, at 30; Doc. 138–1, at 20.

[45] *Id*.

[46] *See* Doc. 148–1, at 33–46.

[47] Doc. 143–1.

remedies. As the cases cited above hold, Plaintiff was required to comply with the requirements of § 44-15-101 prior to filing this § 1983 action.

The Tenth Circuit has explained:

> [T]he initial burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA "lies with the defendant." If the defendant carries this burden, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact." A plaintiff's failure to meet this burden results in the affirmative defense barring his claim and entitles the defendant to summary judgment as a matter of law.[48]

Courts in this district have found that a defendant satisfies the initial burden to show that a plaintiff failed to exhaust administrative remedies where the defendant provides a KDOC records custodian affidavit that explains that they reviewed the grievance records and found evidence that a plaintiff availed himself of the grievance process but did not complete it.[49] Defendant Koob's motion was supported by a concise statement of material facts pursuant to D. Kan. Rule 56.1(a) that referred to the record with specificity. On the exhaustion issue, these facts cited affidavit testimony contained in the *Martinez* report. That testimony established that KDOC records custodians have no records showing that Plaintiff properly exhausted administrative remedies.

Plaintiff then had the burden to demonstrate with specificity that there is an issue of material fact on the exhaustion issue. Plaintiff failed to specifically controvert Defendant Koob's statement of uncontroverted facts, and Plaintiff's responsive filings likewise do not contain Plaintiff's own concise statement of material facts referring with particularity to the record as envisioned by Rule 56.1(b). Plaintiff has not provided evidence that he exhausted administrative

---

[48] *Moore v. Tresch*, 2022 WL 612796, at *2 (10th Cir. Mar. 2, 2022) (unpublished) (internal citations omitted).

[49] *See Lewis v. Carrell*, 2014 WL 4450147, at *10 (D. Kan. 2014) (citation omitted).

remedies. Accordingly, judgment is entered in Defendant Koob's favor and against Plaintiff as a matter of law for failure to exhaust administrative remedies.[50]

### 2. Merits

The Court finds that even if Plaintiff could show that he exhausted his administrative remedies or exhaustion was unavailable, there is no genuine dispute as to any material fact regarding Plaintiff's Eighth Amendment claim against Defendant Koob and Defendant Koob is entitled to judgment as a matter of law.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[51] "To establish deliberate indifference based on prison officials failing to attend to an inmate's serious medical needs, a plaintiff must satisfy an objective and subjective component."[52]

"The objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause."[53] "To satisfy the subjective component, the plaintiff must show the official knows of and disregards an excessive risk to inmate health or safety."[54] "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

---

[50] *See Kidd v. Baker*, 2023 WL 2396530, n.2 (10th Cir. 2023) (unpublished) (noting that "[a] dismissal for failure to exhaust is usually without prejudice. *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005). In this case, however, the record indicates Kidd could not now file a timely administrative grievance. *See* Kan. Admin. Regs. § 44-16-104a(a) (setting out a ten-day timeframe for filing a claim of personal injury). Thus, allowing Kidd an attempt to properly exhaust his claims would be futile. *See Thompson v. Coulter*, 680 F. App'x 707, 712 (10th Cir. 2017) (unpublished disposition cited exclusively for its persuasive value)).

[51] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

[52] *Estate of Wright v. Burnham*, 2023 WL 386598, at *4 (10th Cir. 2023) (unpublished) (quoting *Smith v. Allbaugh*, 987 F.3d 905, 910 (10th Cir. 2021)).

[53] *Id.* (quoting *Sawyers v. Norton*, 962 F.3d 1270, 1283 (10th Cir. 2020) (quotations omitted)).

[54] *Id.* (quotations omitted).

the inference."[55]

In determining whether the subjective component has been established, the Tenth Circuit has recognized "two types of conduct constituting deliberate indifference"—failure to treat and failure to act as a gatekeeper.[56] The first and most common type is when a medical professional acts in a treating role and the "medical professional may fail to treat a serious medical condition properly."[57] "The second type is when a prison official or medical professional knows that his role is to serve as a gatekeeper for other medical personnel capable of treating the condition, but 'he delays or refuses to fulfill that gatekeeper role' and 'prevent[s] an inmate from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment.'"[58]

Knowledge of relevant symptoms can be sufficient to trigger a duty as a gatekeeper to provide access to medical personnel who could provide care.[59] The Tenth Circuit has explained that where a prison official fulfills their gatekeeping role "by communicating the inmate's symptoms to a higher-up" the official is not deliberately indifferent to an inmate's serious medical needs.[60] "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises."[61]

---

[55] *Id.* (quotations omitted).

[56] *Id.* (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)).

[57] *Id.*

[58] *Id.*

[59] *See Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1179 (10th Cir. 2020).

[60] *Id.* at 1181 (explaining that where a nurse informed a doctor of the patient's condition, she fulfilled her gatekeeping role).

[61] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023) (citations omitted).

In his response, Plaintiff asserts that Captain Koob came into Plaintiff's HCF Infirmary cell at around 2 a.m., and Plaintiff told "that corrupt imbecile I've had a heart attack" and pled with him to call an ambulance and Koob "refused to call in the corrupt nurses Denton & Dickerson to take [Plaintiff's] B/P & it being 8 hours since [Plaintiff's] B/P & Traponin [sic] level was checked."[62]

The parties agree that Plaintiff asked Defendant Koob to call Plaintiff an ambulance on December 31, 2019. Defendant Koob affirmed that, although he has the authority to call an ambulance, when circumstances permit, it is his practice to defer to medical providers' decisions about whether calling an ambulance is necessary. Medical staff were readily available, and Plaintiff was in the infirmary, across from the nurses' station. This was not a situation where a prison official needed to call an ambulance because medical staff were unavailable.

Here, Plaintiff was and had been in the infirmary receiving treatment for hours—at least from 7:45p.m. until 2:00 a.m. Defendant Koob affirmed that after Plaintiff requested that an ambulance be called, Defendant Koob would have spoken to Corizon medical staff about whether calling an ambulance was necessary. Plaintiff had already been administered a Troponin test, and a doctor determined his results to be normal. Medical staff had been attempting to provide Plaintiff treatment for hours, although Plaintiff had not always cooperated with those attempts. Defendant Koob affirmed that due to Plaintiff's cell's proximity to the nursing station, he was sure medical staff was aware of Plaintiff's circumstances, but that he would have consulted medical staff regardless. The medical staff at HCF was well informed of Plaintiff's medical condition and history, had performed the appropriate testing, and administered medical care.

---

[62] Doc. 134, at 2; *see also* Doc. 138, at 3 and Doc. 143, at 1 (stating that Koob "would not even ask those corrupt nurses Denton & Dickerson to simply check my B/P vitals or do another EKG"); Doc. 138, at 4.

Defendant Koob's interaction with Plaintiff occurred around 2 a.m. on December 31st. By 3:00 a.m. Plaintiff had calmed down and appeared to be sleeping restfully.  By 4:30 a.m. Plaintiff refused breakfast and morning medications.  By 7:45 a.m. Plaintiff had resumed yelling he had chest pains and telling medical staff to "Get the hell outta here" when they entered his cell to assess him. By 9:15 a.m. when Dr. Monir checked on Plaintiff, Plaintiff was still very upset, cursing at and threatening the officers and nurse present . . . denied chest pain, shortness of breath, syncope, dizziness, or diaphoresis . . . had regular [heart rate] and rhythm. No carotid brit or jugular vein distention . . . No edema in his extremities . . .[his] electrocardiography showed no acute findings . . . troponin levels were within normal limits . . ." And Plaintiff was then discharged from the infirmary and sent back to his living area.

Defendant Koob's consultation with medical staff in the infirmary was consistent with KDOC HCF General Orders, which instruct KDOC employees to contact and defer to medical providers when an inmate needs emergent medical care. Defendant Koob then fulfilled his gatekeeper role by speaking to medical staff about Plaintiff's request. Defendant Koob did not prevent Plaintiff from receiving treatment or deny Plaintiff access to medical personnel capable of evaluating Plaintiff's need for treatment. The undisputed facts establish that Plaintiff was already in the infirmary under observation, he had been seen and treated by medical personnel, he was housed directly across from the nurse's station, and Defendant Koob consulted with medical personnel regarding Plaintiff's condition. Defendant Koob was not deliberately indifferent to Plaintiff's serious medical needs. Defendant Koob is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

**V.      CONCLUSION**

Defendant Koob is entitled to summary judgment in his favor because Plaintiff failed to exhaust his available administrative remedies prior to filing suit and Defendant Koob was not deliberately indifferent to Plaintiff's serious medical needs.

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 104) is **GRANTED**.

IT IS SO ORDERED.

Dated: May 19, 2023                    /s/ *Holly L. Teeter*_____
                                       HOLLY L. TEETER
                                       UNITED STATES DISTRICT JUDGE