## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PATRICK C. LYNN,

   Plaintiff,

   v.           Case No. 5:19-cv-03117-HLT

CHARLIE WILLNAUER, et al.,

   Defendants.

## MEMORANDUM AND ORDER

Defendants Aleycia McCullough and Debra Lundry (collectively "Defendants")[1] move for summary judgment or dismissal (Doc. 115). Plaintiff has filed responses (Docs. 134, 138 and 143),[2] Defendants have filed a reply (Doc. 146), and the motion is ripe for decision. Defendants' motion is granted for the reasons stated herein.

## I. PROCEDURAL HISTORY

Plaintiff, Patrick C. Lynn, brings this pro se prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis.[3] The Court screened Plaintiff's First Amended Complaint ("FAC") and entered a Memorandum and Order (Doc. 45) ("M&O") dismissing various claims and defendants set forth in the FAC. Plaintiff's remaining claims are his Eighth Amendment claim in Count I and his state law medical malpractice

---

[1] The Court generally refers to McCullough and Lundry as "Defendants" throughout this order for simplicity. Occasionally the Court will still identify them by name for clarity (i.e., Defendants McCullough or Lundry).

[2] The Court recognizes Plaintiff's pro se status and liberally construes his filings but will not become his advocate.

[3] Doc. 28.

claim in Count II regarding his medical care: on May 25, 2019[4] at the Lansing Correctional Facility ("LCF"); June 26-28, 2019 at LCF; December 30-31, 2019 at the Hutchinson Correctional Facility ("HCF"); and December 23, 2020 at LCF. Plaintiff's claims against Defendants McCullough and Lundry relate to Plaintiff's medical care on all these dates except December 23, 2020.[5]

On November 10, 2022, Defendants filed a Motion to Dismiss or for Summary Judgment (Docs. 115) and a Memorandum in Support (Doc. 118). Because Defendants rely on additional evidentiary materials relating to the claims, the motion will be construed as a motion for summary judgment under Fed. R. Civ. P. 56. As required by Local Rule 56.1(d), Defendants provided Plaintiff, who is proceeding pro se, with the required notice (Doc. 121) regarding motions for summary judgment.[6] Local Rule 56.1 (b) provides that:

> **b)  Opposing Brief.**
>
> (1)  A brief in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.
>
> (2)  If the party opposing summary judgment relies on any facts not contained in movant's brief, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will

---

[4] Although Plaintiff claims that the events occurred on May 25, 2019, other evidence suggests the actual date may have been May 26, 2019.

[5] Plaintiff's claims in his FAC regarding his medical care on December 23, 2020, do not involve either defendant. *See* Doc. 43–3, at 18, ¶ 29.

[6] The notice attaches Fed. R. Civ. P. 56 and D. Kan. Rule 56.1, and provides that: "you may not oppose summary judgment simply by relying upon the allegations in your complaint" and "[i]f you do not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant, the court may accept defendant's facts as true, in which event your case may be dismissed and judgment entered in defendant's favor without a trial." D. Kan. Rule 56.1 (d); *see* Doc. 121.

be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.[7]

Plaintiff has filed a response that he titles a "First Response" (Doc. 134), an additional response (Doc. 138), and Plaintiff's Supplement & Clarifications to Doc. 138 (Doc. 143). Plaintiff's consolidated responses address both of the pending dispositive motions and fail to specifically controvert Defendants' statement of material facts.[8] *See* D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."); Fed. R. Civ. P. 56(c)(1) and (e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . ..").

## II.    UNCONTROVERTED FACTS

## Procedural Background

---

[7] D. Kan. Rule 56.1 (b).

[8] The Court notes that Plaintiff has been aware that exhaustion was an issue and has had ample time to respond regarding the issue. The Court's August 1, 2022 Memorandum and Order found that there was merit to the claim that Plaintiff failed to exhaust his administrative remedies. Doc. 82, at 6. Plaintiff has also been granted multiple extensions of time to respond to the dispositive motions. In fact, despite being allowed to proceed in forma pauperis as a three-striker based on "imminent danger," he has sought stays and extensions throughout this case. *See, e.g.*, Doc. 29, filed September 16, 2020 (Plaintiff's Motion for 60 Days Temporary Stay of All Proceedings); Doc. 32, filed October 29, 2020 (Plaintiff's Motion for Final 10 Days Time Extension to File Amended Complaint); Doc. 36, filed November 16, 2020 (Plaintiff's Sworn Motion for Referral to US Atty Ofc for Prosecution & for 60 Days Temporary Stay); Doc. 46, filed April 21, 2021 (Plaintiff's Motion for Stay of Martinez Report Order); Doc. 70, filed November 18, 2021 (Plaintiff's Motion for Orders, seeking a 30-day extension of time to respond to the Martinez Report); Doc. 72, filed January 5, 2022 (Plaintiff's Motion for Additional Time Extension of 60 Days); Doc. 78, filed March 3, 2022 and subsequently stricken as an unauthorized filing (Plaintiff's Motion for Additional 30 Days Time Extension Due to Extenuating Circumstances); Doc. 112, filed November 8, 2022 (Plaintiff's Motion for 30 Days Time Extension); Doc. 123, filed December 16, 2022 (Plaintiff's Motion for 60 Days Additional Time Extension); Doc. 126, filed February 15, 2023 (Plaintiff's Good Faith Motion for an Additional 30 Days Time Extension); Doc. 128, filed March 15, 2023 (Plaintiff's Verified Motion for an Additional Ten Days Time Extension); Doc. 130, filed April 4, 2023 (Plaintiff's Good Faith Sworn Motion for an Additional Time Extension); Doc. 132, filed April 14, 2023 (Plaintiff's Sworn Motion Requesting the Court to Grant the 8 Days "Stolen" From Time the EFN (Doc. 131) Sent & Date/Time Received); Doc. 135, filed April 17, 2023 (Plaintiff's Request for Orders, seeking additional time to respond); Doc. 137, filed April 24, 2023 (Plaintiff's Request for Extension).

1. On August 1, 2022, the Court entered its Memorandum and Order ("Screening Order") (Doc. 82) relating to the Martinez Report submitted by the KDOC (Doc. 63) and the response to the Martinez Report submitted by Plaintiff (Doc. 80).

2. In the Screening Order, the Court determined that "the only remaining claims from Plaintiff's FAC are his Eighth Amendment claim in Count I and his state law medical malpractice claim in Count II regarding "Plaintiff's medical care on May 25, 2019 at the Lansing Correctional Facility ("LCF'); June 26-28, 2019 at LCF; December 30-31, 2019 at the Hutchinson Correctional Facility ("HCF"); and December 23, 2020 at LCF." (Doc. 82, pp. 6, 11).

**Facts Relevant to All Dates at Issue**

3. Plaintiff is a 66-year-old male with a history of severe coronary artery disease, chronic angina (chest pain), and chronically elevated troponin levels. (Doc. 63-3, ¶ 6; Doc. 63-8, p. 2).

4. Troponins are a group of proteins found in heart muscle fibers that regulate muscular contraction. (Doc. 63-8, Nt. 1). Troponin tests measure the level of cardiac-specific troponin in the blood. (Doc. 63-8, Nt. 1). **The normal range for troponin is between 0 and 0.4 ng/ml**. (Doc. 63-8, Nt. 1). Because a blood draw and off-site testing is required, **nursing staff cannot order a troponin test**; the on-call physician must order and interpret the troponin test. (Doc. 63-8, Nt. 1).

5. At all times relevant to Plaintiff's First Amended Complaint ("FAC"), Plaintiff was an inmate in KDOC custody. (Doc. 63-1).

**Facts Specific to May 25, 2019**

6. On May 25, 2019, Plaintiff was incarcerated at Lansing Correctional Facility. (Doc. 43-3, p. 9, ¶ 6).

7. Plaintiff alleges, regarding occurrences on May 25, 2019, that he "was advised by RN Tom during his initial assessment after being 'recruited' by Capt. Gallagher, that he was writing

up a disciplinary report on both nurses to the LCF HSA McCullough & he opined that it would be a futile act because the 'HSA McCullough didn't give a shit about medical staff misconduct against LCF residents,' & **she did nothing to hold either nurse accountable,** & the security staff . . . all likewise refused to act on my written complaints & claims, nor did the Corizon Medical Staff at LCF . . . ." (Doc. 43-3, p. 10, ¶ 7) (emphasis added).

8. Plaintiff's allegations relating to May 25, 2019 regarding Ms. McCullough do not pertain his to actual medical care. (Doc. 43-3, p. 9, ¶ 6).

9. Plaintiff was not provided—nor did he request—medical services on May 25, 2019, contrary to the allegations made in his First Amended Complaint. (Doc. 63-20, ¶ 7).

10. McCullough was not involved in Plaintiff's medical care on May 25, 2019. (Doc. 63-20, ¶ 7).

11. As the Health Services Administrator, McCullough was never involved in medical interventions. (Doc. 63-25, pp. 1-2).

12. McCullough holds a bachelor's degree in Psychology from Valparaiso University and a Master of Business Administration degree from Walden University. McCullough does not have a medical degree. (Doc. 118-2, Exhibit A, McCullough Resume, p. 1).

13. Plaintiff did not file any grievances, or otherwise formally complain to LCF staff regarding the alleged occurrences on May 25, 2019. (Doc. 63-22; Doc. 63-23).

**Facts Specific to June 26 Through 28, 2019**

14. On June 26 through June 28, 2019, Plaintiff was incarcerated at LCF. (Doc. 43-3, p. 11, ¶¶ 11-14).

15. Plaintiff alleges, regarding occurrences on June 26, 2019, that he "could no longer tolerate the urgency of [his] continuing terrible heart attack symptoms as stated in [Paragraph 6 of

the FAC] & declared another chest pains medical emergency & was readmitted into the Infirmary again & another Troponin sample taken stat & tested to be 0.127 & was again denied pain meds per Dr. Willnauer & Dr. Lewis-Harris & my pleas to take me to a hospital was denied by APRN Kaur & HSA McCullough & per both Dr.'s." (Doc. 43-3, p. 11, ¶ 11).

16. Regarding the alleged occurrences on June 27, 2019, Plaintiff claims that "RN Yoakum took my Troponin sample & told me that her & other nurses were alarmed by the ongoing refusals of McCullough, Willnauer & Lewis-Harris to send me to a hospital for care & treatment by a cardiologist & to provide me w/ pain meds & she told me it took over 6 hrs. for my stat blood sample to be picked up & taken to the St. John's hospital lab 3 miles away, & the sample tested at 0.124 & she said Dr. Lewis-Harris had declared it was costing too much money to keep sending me to a hospital, & that she & other nurses were cognizant of the fact that McCullough, Willnauer, & Lewis-Harris were intentionally prolonging my immense heart attack symptoms pain & suffering & had intent to cause me a crippling stroke or fatal heart attack." (Doc. 43-3, p. 11, ¶ 13).

17. On June 26, 2019, McCullough provided a Corizon nurse the direct phone number for on-call physician Dr. Sayeed while Plaintiff was being held in the Infirmary on a 23-hour observation after receiving a troponin test that returned with normal results. (Doc. 119, at 4 (sealed); Exhibit B – Medical Records for June 26 through June 28, 2019).

18. During that conversation McCullough corrected an apparent typographical error in Plaintiff's chart. *Id*.

19. McCullough was not directly involved in Plaintiff's medical care on June 26 through 28, 2019. *Id*.

20. As the Health Services Administrator, McCullough was never involved in providing direct medical or nursing interventions. (Doc. 63-25, pp. 1-2).

21. McCullough, as an MBA and not a Nurse, did not have the authority to order an inmate be admitted to a hospital. (Doc. 63-27; Doc. 63-28).

22. Plaintiff did not file any grievances, or otherwise formally complain, to LCF staff regarding the alleged occurrences on June 26 through 28, 2019. (Doc. 63-22; Doc. 63-23).

**Facts Specific to December 30 and 31, 2019**

23. On December 30 and 31, 2019, Plaintiff was incarcerated at HCF. (Doc. 63-3, ¶¶ 11-15).

24. Regarding the alleged occurrences on December 30 and 31, 2019, Plaintiff claims that he "suffered severe heart attack symptoms & was placed into the HCF Infirmary & a Troponin sample [was] taken & was claimed by HCF Infirmary nurses Denton & Dickinson to have tested to be 0.007 which [Plaintiff] knew was absurd in the face of having a sky-high racing B/P & the same symptoms as listed in [Paragraph 6 of the FAC]. And from 6 pm to 10:30 am on 12-31-19, [Plaintiff] was denied heart meds, pain meds, & even having [Plaintiff's] B/P reassessed or another Troponin sample taken due to those nurses maliciously deliberate indifference. And at around 2 am/12-31-19 Capt. Koob came into [Plaintiff's] Infirmary room w/ several security staff as [Plaintiff] declared having a heart attack & denied being assessed and [Plaintiff] pleaded w/ him to invoke his authority to independently call EMS & he was fully aware of my renowned atrocious heart condition & himself having a heart condition, & Koob along w/ the other security staff all present, refused to independently call EMS to get me to a hospital & refused to even direct those nurses to assess [Plaintiff]." (Doc. 43-3, ¶ 19).

25. On December 30, 2019, Plaintiff reported to the clinic complaining of chest pains after yelling at a correctional officer and throwing his lunch tray. Plaintiff stated that he consumed three nitroglycerin tablets prior to arriving at the clinic. HCF staff attempted to clinically examine

Plaintiff and perform an EKG but were unable to do so because Plaintiff was uncooperative. Specifically, Plaintiff would not stop tapping on his chest and moving his arms around which ultimately impaired the test results. (Doc. 63-3, ¶ 11).

26. The on-call physician was contacted, and a stat troponin lab was ordered and obtained. Plaintiff was taken to the infirmary while awaiting the test results. Plaintiff had to be taken by wheelchair because he refused to walk as he was purportedly short of breath. However, Plaintiff was observed to be continuously yelling at HCF correctional staff without taking breaths or demonstrating any signs of impaired breathing at the time. (Doc. 63-3, ¶ 12).

27. Plaintiff's troponin lab results came back at 0.075 ng/ml; the on-call physician advised that such a result was within normal limits for Plaintiff given his chronic cardiac health condition. (Doc. 63-3, ¶ 13).

28. A normal range for troponin is between 0.0 and 0.4 ng/ml. So, Plaintiff's troponin lab on December 30, 2019, was within the range for normal individuals as well. (Doc. 63-3, ¶ 13).

29. Throughout the night, Plaintiff was uncooperative with staff. At one point, Plaintiff jumped off his bed screaming at the HCF staff that he was going to kill them all. Plaintiff continued shouting obscenities at the HCF staff and banging on his door. Later, Plaintiff threatened the families of the HCF staff saying that he would kill all of them also. (Doc. 63-3, ¶ 14).

30. In the morning of December 31, 2019, Plaintiff remained uncooperative and continued to threaten HCF staff. Dr. Monir arrived for patient rounds and examined Plaintiff. Plaintiff was found to be within normal clinical limits and was discharged to the Restrictive Housing Unit. (Doc. 63-3, ¶ 15; Doc. 120 (sealed), Exhibit C Medical Records from December 30-31, 2019).

31. A nurse cannot order a troponin test and the on-call physician must order and interpret the test. (Doc. 63-8, Nt. 1).

32. Lundry was not directly involved in Plaintiff's medical care at the HCF on December 30 through December 31, 2019. (Doc. 120 (sealed), Exhibit C Medical Records from December 30-31, 2019).

33. As the Health Services Administrator, Lundry was not charged with providing direct medical or nursing interventions. (Doc. 63-25, pp. 1-2; Doc. 63-31, p. 2).

34. Lundry did not have the authority to order an inmate be admitted to a hospital. (Doc. 63-3; Doc. 63-27; Doc. 63-28).

35. Lundry obtained her registered nursing degree in 1992. (Doc. 63-3, p. 2).

## III.    LEGAL STANDARDS

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.[9] A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law" and is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]  The Court views all evidence and draws all reasonable inferences in the light most favorable to the party opposing summary judgment.[11]  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[12]

## IV.    ANALYSIS

### 1. Exhaustion

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all

---

[9] Fed. R. Civ. P. 56(a) and (c).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

[11] *Pinkerton v. Colorado Dep't. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (citation omitted).

[12] *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).

available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).[13] "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."[14]

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."[15] An inmate exhausts by complying with "an agency's deadlines and other critical procedural rules."[16] A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein.[17] "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies."[18] "The level of detail necessary in a grievance to comply with the

---

[13] *See also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).

[14] *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

[15] *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249; *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (quoting *Jones*, 549 U.S. at 211)).

[16] *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

[17] *Little*, 607 F.3d at 1249 (citing *Woodford*, 548 U.S. at 90).

[18] *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[19]

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies.[20] The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit.[21]

For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis.[22] If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections.[23] The procedure to follow at each level is described in detail in the Kansas Administrative Regulations.[24]

As this Court has previously found, there are two distinct avenues of administrative exhaustion established in Kansas law:

> The first avenue is found in the regulations codified by Article 15 of chapter 44 of the Kansas Administrative Regulations. These regulations govern inmate grievances covering "a broad range of matters that directly affect the inmate, including" complaints about policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility. Kan. Admin. Regs. § 44–15–101a(d)(1)(A)–(B). As the Court previously

---

[19] *Jones*, 549 U.S. at 218.

[20] *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

[21] *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

[22] K.A.R. § 44–15–101(b).

[23] K.A.R. § 44–15–101(d).

[24] § 44–15–102; *see also Garza v. Correct Care Solutions*, 2011 WL 2580299, at *2 (D. Kan. 2011), *aff'd* 451 F. App'x 775 (10th Cir.) (granting summary judgment for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that he sought relief on his claims first through his unit team, then the warden, and finally from the Secretary of Corrections).

determined, this regulation applies to a constitutional claim such as the one asserted here, where the conduct complained of stems from "actions by employees" of the prison facility. *Id*. § 44–15–101a(d)(1)(B).[25]

"The second avenue is governed by the regulations in Article 16 of chapter 44 of the Kansas Administrative Regulations."[26] Kan. Admin. Regs. § 44–16–104a applies to claims for personal injury and provides: "(a) Each inmate claim for personal injury shall be submitted to the [prison] facility and [the] secretary of corrections within 10 calendar days of the claimed personal injury."[27]

The Kansas Court of Appeals has explained that the two sets of regulations found in Articles 15 and 16 are "separate and distinct" from one another.[28] Indeed, the regulation "expressly provides: 'The grievance procedure [in article 15] shall not be used in any way as a substitute for, or as part of, the . . . property loss or personal injury claims procedure [in Article 16] . . .'"[29]

The Court in *Conley* addressed defendants' argument that plaintiff failed to file a personal injury claim in a § 1983 case, and noted that while case law establishes that exhaustion of Article 15's procedures alone is not sufficient for a plaintiff to assert a personal injury claim, the Court "had not located any authority requiring an inmate to exhaust both the requirements of Article 15 and Article 16 before asserting a § 1983 claim based on an alleged violation of an inmate's constitutional rights" and declined to invent such a requirement.[30] However, the Court did find that exhaustion under § 44–15–101 was necessary for plaintiff's § 1983 claim.[31] The Court

---

[25] *Lewis v. Carrell*, 2015 WL 413640, at *2–3 (D. Kan. 2015).

[26] *Id*. at *3.

[27] *Id*. (citing Kan. Admin. Regs. § 44–16–104a).
[28] *Id*. (citing *Redford v. Kan. ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL 781102, at *6 (Kan. Ct. App. Mar. 1, 2013 (unpublished table decision)).

[29] *Id*. (quoting Kan. Admin. Regs. § 44–15–101a(d)(2); *see also Sharrock v. Stephens*, 2011 WL 5526444, at *1 (D. Kan. 2011) ("Importantly, the requirements in [§ 44–16–104a] apply regardless of whether the inmate pursues a grievance pursuant to § 44–15–101.").

[30] *Conley v. Pryor*, 2015 WL 413638, at *14 (D. Kan. 2015).

[31] *Id*.

found that where plaintiff asserted a § 1983 claim for failure to provide proper dental care, plaintiff's claim constituted a complaint about the conditions of his imprisonment and the actions of employees, which requires exhaustion under Kan. Admin. Regs. § 44–15–101.[32] Likewise, the Court in *Nunez*, stated that "an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act."[33] The Court held that "Article 15 of the KDOC regulations covers the administrative procedures that must proceed a § 1983 claim."[34] The Tenth Circuit has upheld the requirement that a plaintiff must comply with the requirements of § 44-15-101 prior to filing a § 1983 case, regardless of an attempt to comply with the requirements of § 44-16-104a.[35]

Despite the notice he received cautioning him that he cannot rely on his allegations in his FAC, Plaintiff responds to the motion for summary judgment by arguing that the Court should consider the allegations in his FAC.[36] Plaintiff's response sets forth various irrelevant arguments and accusations and alleges that Defendants and defense counsel are not credible. However, Plaintiff does not directly controvert Defendants' Statement of Uncontroverted Material Facts.[37]

Regarding exhaustion, Plaintiff states that he exhausted his administrative remedies because "it would be patently out of character for me not to have pursued <u>every available tenant</u>

---

[32] *Id*.

[33] *Nunez v. Heimgartner*, 2017 WL 2264466, at *5 (D. Kan. 2017) (citation omitted).

[34] *Id*. at *6 (citation omitted); *see also Jones v. Parks*, No. 19-cv-3175-HLT-GEB, Doc. 50 at n.3 (D. Kan. April 13, 2021) ("Plaintiff's alleged personal injury claims based off the same incidents does not exhaust his § 1983 claim.").

[35] *See Lynn v. Kelly*, 2022 WL 1043752, at *1 (10th Cir. 2022) (unpublished) ("Mr. Lynn may have attempted to comply with the distinct requirements of § 44-16-104a, but he wholly ignored the requirements of § 44-15-101. . . . As Mr. Lynn failed to comply with the established grievance process, summary judgment was proper."); *Kidd v. Baker*, 2022 WL 17485932, at *5–6 (D. Kan. 2022) (describing the dual-track system of administrative exhaustion set out in Kansas law), *affirmed* 2023 WL 2396530 (10th Cir. 2023).

[36] Doc. 134, at 1–2; Doc. 138. Plaintiff also sought discovery, sought the appointment of counsel, claimed he did not receive Exhibit 32 to the *Martinez* Report, sought to have a polygraph test, and sought leave to file a second amended complaint. Doc. 135. These requests were denied in the Court's April 19, 2023 Order at Doc. 136.

[37] Doc. 118–1.

of KDOC admin. remedies (KAR 44-15-101 et seq., 44-15-106, KAR 44-15-201, KAR 44-16-104(a) & 44-16-105, & IMPP 01-118 strictures too[)].”[38] Plaintiff filed this case on July 2, 2019, and in his original Complaint he raises claims regarding his medical care on May 25, 2019, and June 26-28, 2019.[39] However, he would have filed the case only a few days after his medical care on June 26-28, 2019, and prior to his medical care in December 2019 and December 2020. It is not conceivable that Plaintiff complied with the grievance process within a few days. Plaintiff's request for relief in his original Complaint seeks, among other relief, “a waiver of pursuing (future, predetermined) admin. remedies.”[40]

Plaintiff also concludes that he has exhausted his administrative remedies because “that's a no brainer & prison officials & medical officials confiscated my documentations at every level & simply don't respond. It's a systemic dead-end.”[41] However, Plaintiff has submitted copies of

---

[38] Doc. 134, at 6; *see also* Doc. 143, at 2 (stating “I've become a renowned litigator & I am reasonably intelligent—I f'n know how to exhaust all available admin. remedies”.). Plaintiff argues that it would be patently out of character for him not to pursue every available tenant of the KDOC administrative remedies. About six months prior to filing this case, Plaintiff filed another case in this Court regarding his conditions at EDCF. *See Lynn v. Cline*, Case No. 19-3003-EFM-KGG (D. Kan.) (filed January 4, 2019). On May 25, 2021, the Court entered a Memorandum and Order (Doc. 135) granting summary judgment to defendants based on Plaintiff's failure to exhaust his administrative remedies. *See Lynn v. Cline*, Case No. 19-3003-EFM, 2021 WL 2104981 (D. Kan. May 25, 2021), *aff'd* 2022 WL 1043753 (10th Cir. April 7, 2022).

In opposing summary judgment in Case No. 19-3003, Plaintiff argued that both available administrative remedies—KAR 44-15-101 and KAR 44-16-104a—are “copecetic [sic] to each other as to clearly notify[ ] prison authorities of an actionable wrong.” *Id*. at Doc. 129–1, at 2 (filed April 8, 2021). Plaintiff claimed that “the only available proper admin. remedy was a personal injury claim per KAR 44-16-104a” and that “[a] reasonable person would interpret KAR 44-16-104a as the only proper available admin. remedy & utilize the Personal Injury Claim form . . . to exhaust his money damages claim.” *Id*. at 2–3. The Court held that “Plaintiff's personal injury claims were insufficient to properly exhaust his § 1983 claims.” *Lynn*, 2021 WL 2104981, at *5.

As of Plaintiff's April 8, 2021 filings in Case No. 19-3003, he was maintaining the position that exhaustion under KAR 44-16-104a is the only path to exhausting administrative remedies. Plaintiff filed the instant case on July 19, 2019, and filed his FAC on February 8, 2021. Therefore, Plaintiff was maintaining this position after he filed his Complaint and his FAC in this case.

[39] Doc. 1, at 4–5.

[40] *Id*. at 6.

[41] Doc. 138, at 6 (claiming the KDOC “cherry-picks” which grievances to respond to on any level).

multiple grievances relating to other claims, but he has not submitted documentation showing he exhausted his administrative remedies regarding his remaining claims in this case.

Plaintiff attaches a copy of his complaint to the Kansas State Board of Nursing against nurses that are not defendants in this case and relating to an incident on November 10, 2022, at EDCF, which is not an issue in this case.[42] Plaintiff also attaches copies of his grievances regarding this unrelated incident.[43] Plaintiff also attaches his grievances regarding his medical care on November 19, 2022, at EDCF.[44] The medical providers involved are not defendants in this case and the medical issues are unrelated to the issues in this case.[45] The Court notes that Plaintiff attaches two letters to state court judges, a letter to the Leavenworth County Sheriff, and a letter to the Wyandotte County Sheriff, seeking to institute criminal charges against staff, but none of these letters are proper avenues for exhaustion.[46] Plaintiff also attaches the warden's response to grievances he filed in May 2020, regarding Plaintiff's KOP medication and his property claim with EDCF.[47]

Plaintiff has also submitted various Property Damage/Loss or Personal Injury Claim Forms.[48]  However, these forms are submitted pursuant to K.A.R. 44-16-104a and are insufficient

---

[42] Doc. 148–1, at 16–19; Doc. 138–1, at 7–10.

[43] Doc. 148–1, at 21–29, 31–32; Doc. 138–1, at 11–19, 21–22.

[44] *See* Doc. 148–1, at 30; Doc. 138–1, at 20.

[45] *Id.*

[46] *See* Doc. 148–1, at 33–46.

[47] Doc. 143–1.

[48] Plaintiff submitted: a July 5, 2019 property/personal injury claim #AA0113533, regarding medical care at LCF on June 27, 2019, and property damage (Doc. 148–1, at 51–53; and Doc. 63–33); and a March 9, 2020 property/personal injury claim regarding destruction of his property on December 31, 2019 (Doc. 148–1, at 55).  The *Martinez* Report included: a December 27, 2020 property/personal injury claim #AA0114128, regarding Plaintiff's medical care on December 17, 2020, when he was transported to and from the KU Medical Center (Doc. 63–34); a December 31, 2020 property/personal injury claim #AA0114127, regarding Plaintiff's medical care on December 22-23, 2020, after he returned to LCF from the KU Medical Center (Doc. 63–35); a March 9, 2020 "resubmitted" property/personal injury claim #BA0008905, regarding Plaintiff's medical care on December 30-31, 2019, at HCF (Doc. 63–36); and another

to show that Plaintiff exhausted available administrative remedies. As the cases cited above hold, Plaintiff was required to comply with the requirements of § 44-15-101 before filing this § 1983 action.

Plaintiff has submitted copies of multiple Inmate Request to Staff Member forms (Form 9), which document an attempt at informal resolution pursuant to K.A.R. 44-15-101.[49] However, after an attempt at informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections.[50] Nothing in the record shows that Plaintiff proceeded through all three levels to fully exhaust his administrative remedies regarding the remaining claims in this case.[51]

The Tenth Circuit has explained:

> [T]he initial burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA "lies with the defendant." If the defendant carries this burden, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact." A plaintiff's failure to meet this burden results in the

---

March 9, 2020 "resubmitted" property/personal injury claim #BA0008903, regarding Plaintiff's medical care on December 31, 2020, at HCF (Doc. 63–37). All Plaintiff's claims were denied.

[49] *See* Doc. 148–1, at 11 (August 5, 2019 Form 9 regarding destruction of another inmate's property); Doc. 148–1, at 12 (September 3, 2019 Form 9 regarding Plaintiff's property); Doc. 148–1, at 13 (April 16, 2021 Form 9 regarding Plaintiff's property); Doc. 148–1, at 47 (May 15, 2020 Form 9 regarding Plaintiff's outstanding property/injury claims); Doc. 148–1, at 48 (June 1, 2020 Form 9 regarding resolution of Plaintiff's property/injury claims); Doc. 148–1, at 49 (June 2, 2020 Form 9 regarding return of his claims documents); Doc. 148–1, at 50 (June 2, 2020 Form 9 regarding Plaintiff's property claims); Doc. 148–1, at 54 (May 29, 2020 Form 9 regarding Plaintiff's property and daily telephone/kiosk list); Doc. 148–1, at 61 (May 27, 2019 Form 9 regarding Plaintiff's personal property, requesting to have an attached document e-filed, and requesting 6 property/injury claim forms).

[50] K.A.R. § 44–15–101(d).

[51] The *Martinez* Report included Plaintiff's January 27, 2020 grievance submitted at HCF (Doc. 63–15, at 3–4), which only mentions issues with his heart medication being administered as KOP (Keep on Person)—a claim that has been dismissed from this action. *See* Doc. 45, at 35–37; *see also* Doc. 63–16 (Plaintiff's letters to the Secretary of Corrections and to HCF HSA Lundry dated April 3, 2020, only addressing Plaintiff's KOP medications and the SOC's Non-Grievance-Response regarding KOP medications); Doc. 63–18 (letter from the HCF warden regarding Plaintiff's grievances regarding his KOP medication and personal property); Plaintiff also sent Form-9's to the Warden in May 2020, dealing with his KOP medications, claims for lost/destroyed property, Plaintiff's request to have his debt cancelled, and Plaintiff's request for a handicap aide. Doc. 63–19, at 2–5; *see also* Doc. 63–19, at 1 and Doc. 143–1 (letter from the HCF warden responding to Plaintiff's May 2020 grievances).

affirmative defense barring his claim and entitles the defendant to summary judgment as a matter of law.[52]

Courts in this district have found that a defendant satisfies the initial burden to show that a plaintiff failed to exhaust administrative remedies where the defendant provides a KDOC records custodian affidavit that explains that they reviewed the grievance records and found evidence that a plaintiff availed himself of the grievance process but did not complete it.[53] Defendants' motion was supported by a concise statement of material facts pursuant to D. Kan. Rule 56.1(a) that referred to the record with specificity. On the exhaustion issue, these facts cited affidavit testimony contained in the *Martinez* report. That testimony established that KDOC records custodians have no records showing that Plaintiff properly exhausted administrative remedies for the claims remaining in this case.[54]

Plaintiff then had the burden to demonstrate with specificity that there is an issue of material fact on the exhaustion issue. Plaintiff failed to specifically controvert Defendants' statement of uncontroverted facts, and Plaintiff's responsive filings likewise do not contain Plaintiff's own concise statement of material facts referring with particularity to the record as envisioned by Rule 56.1(b). Plaintiff has not provided evidence that he exhausted administrative remedies for the claims remaining in this case. Accordingly, judgment is entered in Defendants' favor and against Plaintiff as a matter of law for failure to exhaust administrative remedies.[55]

---

[52] *Moore v. Tresch*, 2022 WL 612796, at *2 (10th Cir. Mar. 2, 2022) (unpublished) (internal citations omitted).

[53] *See Lewis v. Carrell*, 2014 WL 4450147, at *10 (D. Kan. 2014) (citation omitted).

[54] *See* Doc. 63–14; Doc. 63–22; Doc. 63–23.

[55] *See Kidd v. Baker*, 2023 WL 2396530, n.2 (10th Cir. 2023) (unpublished) (noting that "[a] dismissal for failure to exhaust is usually without prejudice. *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005). In this case, however, the record indicates Kidd could not now file a timely administrative grievance. *See* Kan. Admin. Regs. § 44-16-104a(a) (setting out a ten-day timeframe for filing a claim of personal injury). Thus, allowing Kidd an attempt to properly exhaust his claims would be futile. *See Thompson v. Coulter*, 680 F. App'x 707, 712 (10th Cir. 2017) (unpublished disposition cited exclusively for its persuasive value)").

## 2. Merits

The Court finds that even if Plaintiff could show that he exhausted his administrative remedies or exhaustion was unavailable, there is no genuine dispute as to any material fact regarding Plaintiff's Eighth Amendment claims against Defendants.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[56] "To establish deliberate indifference based on prison officials failing to attend to an inmate's serious medical needs, a plaintiff must satisfy an objective and subjective component."[57]

"The objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause."[58] "To satisfy the subjective component, the plaintiff must show the official knows of and disregards an excessive risk to inmate health or safety."[59] "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[60]

In determining whether the subjective component has been established, the Tenth Circuit has recognized "two types of conduct constituting deliberate indifference"—failure to treat and failure to act as a gatekeeper.[61] The first and most common type is when a medical professional

---

[56] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

[57] *Estate of Wright v. Burnham*, 2023 WL 386598, at *4 (10th Cir. 2023) (unpublished) (quoting *Smith v. Allbaugh*, 987 F.3d 905, 910 (10th Cir. 2021)).

[58] *Id.* (quoting *Sawyers v. Norton*, 962 F.3d 1270, 1283 (10th Cir. 2020) (quotations omitted)).

[59] *Id.* (quotations omitted).

[60] *Id.* (quotations omitted).

[61] *Id.* (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)).

acts in a treating role and the "medical professional may fail to treat a serious medical condition properly."[62] "The second type is when a prison official or medical professional knows that his role is to serve as a gatekeeper for other medical personnel capable of treating the condition, but 'he delays or refuses to fulfill that gatekeeper role' and 'prevent[s] an inmate from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment.'"[63]

Knowledge of relevant symptoms can be sufficient to trigger a duty as a gatekeeper to provide access to medical personnel who could provide care.[64] The Tenth Circuit has explained that where a prison official fulfills their gatekeeping role "by communicating the inmate's symptoms to a higher-up" the official is not deliberately indifferent to an inmate's serious medical needs.[65] "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises."[66]

An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation.[67] A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.[68]

---

[62] *Id.*

[63] *Id.*

[64] *See Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1179 (10th Cir. 2020).

[65] *Id*. at 1181 (explaining that where a nurse informed a doctor of the patient's condition, she fulfilled her gatekeeping role).

[66] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023) (citations omitted).

[67] *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).

[68] *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

McCullough was the Health Services Administrator at LCF on May 25, 2019, and June 26 through 28, 2019.  Lundry was the Health Services Administrator at HCF on December 30 and 31, 2019. By virtue of their positions as Health Services Administrators, neither provided direct medical services to inmates. Plaintiff's responses fail to controvert the fact that neither defendant took part in the medical decision-making process with respect to whether Plaintiff should receive an additional troponin test or be admitted to an off-site hospital.

Regarding Plaintiff's care at LCF on May 25, 2019, Plaintiff claimed that RN Melissa and LPN Sinclair took Plaintiff's blood pressure and then left him laying on the exam table for about 45 minutes.[69] Plaintiff claims that because these two nurses "refused to attend to [Plaintiff's] condition," another nurse, RN Tom, came to assess Plaintiff.[70]   Plaintiff's claims against McCullough for this date are based on her alleged failure to "hold either nurse accountable" for, allegedly, refusing to "attend to [Plaintiff's] condition."[71] Plaintiff alleges that he "was advised by RN Tom during his initial assessment after being 'recruited' by Capt. Gallagher, that he was writing up a disciplinary report on both nurses to the LCF HSA McCullough & he opined that it would be a futile act because the 'HSA McCullough didn't give a shit about medical staff misconduct against LCF residents,' & she did nothing to hold either nurse accountable, & the security staff . . . all likewise refused to act on my written complaints & claims, nor did the Corizon Medical Staff at LCF . . . ."[72]

The uncontroverted facts show that nurses are not allowed to order a troponin test. Although Plaintiff did not name LPN Sinclair as a defendant in his FAC, the Court found that

---

[69] Doc. 43-3, at 9.

[70] Id.

[71] Id. at 9-10.

[72] Id. at 10.

Plaintiff failed to state a claim against RN Melissa based on the care she provided to Plaintiff on May 25, 2019.[73] Plaintiff has failed to show that McCullough was deliberately indifferent to his medical needs by failing to subsequently discipline these two nurses.

Plaintiff's claims against McCullough related to the medical care he received on June 26 through 28, 2019, boil down to an alleged failure of McCullough, among others, to order that Plaintiff be transferred and admitted to a hospital outside of LCF.[74] The uncontroverted facts show that McCullough was not directly involved in Plaintiff's medical care on June 26 through 28, 2019; as the Health Services Administrator, she was never involved in providing direct medical or nursing interventions; and she did not have the authority to order an inmate be admitted to a hospital. Plaintiff has failed to state a claim that McCullough was deliberately indifferent to his serious medical needs on June 26 through 28, 2019.

Plaintiff's claims against Lundry related to the medical care he received on December 30 and 31, 2019, boil down to (A) an alleged failure to order a second troponin test, (B) to provide him with medications, and (C) to order that Plaintiff be admitted to an offsite hospital. However, the uncontroverted facts show that Plaintiff was under the care of medical staff with access to the on-call physician; a nurse cannot order a troponin test and the on-call physician must order and interpret the test; Lundry was not directly involved in Plaintiff's medical care at the HCF on December 30 through December 31, 2019; and as the Health Services Administrator, she was not charged with providing direct medical or nursing interventions and did not have the authority to order an inmate be admitted to a hospital. Furthermore, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does

---

[73] Doc. 82, at 7.

[74] Doc. 43-3, at 11.

not constitute cruel and unusual punishment. Plaintiff has failed to show that Lundry was deliberately indifferent to his serious medical needs.

Plaintiff has also asserted claims of medical malpractice. "Medical malpractice is negligence of a healthcare professional in the diagnosis, care, and treatment of a patient." *Sperry v. Corizon Health, Inc.*, 2020 WL 905745, at *3 (D. Kan. 2020) (quoting *Perkins v. Susan B. Allen Mem'l Hosp.*, 146 P.3d 1102, 1105 (Kan. App. 2006) (citing *Webb v. Lungstrum*, 575 P.2d 22 (Kan. 1978)). Defendants assert that they cannot be sued for medical malpractice because they are being sued while working in the course and scope of their employment as the Health Services Administrators for their respective facilities at LCF and HCF, which is an administrative role.

However, because the Court, through this Memorandum and Order and the Memorandum and Order at Doc. 152, is dismissing all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims. Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction."[75] "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotations omitted); *see also Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) ("[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.") (citation omitted).[76]

---

[75] 28 U.S.C. § 1367(c)(3). The statute also provides for the tolling of the statute of limitations while the claim is pending. *Id.* at (d).

[76] Plaintiff's claims against all defendants stem from four dates: May 25, 2019 at LCF; June 26-28, 2019 at LCF; December 30-31, 2019 at HCF; and December 23, 2020 at LCF. The record demonstrates that Plaintiff did not exhaust his claims for any of these dates. *See, e.g.,* Docs. 63-14, 63-22, and 63-23. Plaintiff has had a full and exhaustive opportunity to brief this issue and has not come forward with any evidence suggesting that he exhausted his claims for any of these dates. The Court has carefully analyzed the record and readily finds that no reasonable jury could find that he exhausted. The Court thus finds none of his claims are exhausted and dismisses any remaining defendants for

The Court has dismissed all of the claims and defendants in this case pursuant to this Memorandum and Order and the following orders: April 13, 2021 Memorandum and Order (Doc. 45); August 1, 2022 Memorandum and Order (Doc. 82); April 26, 2023 Order (Doc. 140); and May 19, 2023 Memorandum and Order (Doc. 152).

Plaintiff has filed a "Rebuttal to Defendant's Doc. #144," [77] taking issue with counsel's response at Doc. 144 confirming that this case is not subject to the bankruptcy stay in In re: Tehum Care Services, Inc., Case No. 23-90086 (CML), pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Plaintiff has not filed his rebuttal as a motion, and to the extent Plaintiff seeks any relief, including the appointment of counsel or a zoom hearing, the requests are denied.

Plaintiff has also filed a "Motion for Orders,"[78] complaining about the delay in receiving mail at EDCF. If Plaintiff believes he has a claim regarding his mail at EDCF, he should file a complaint after exhausting his administrative remedies. Plaintiff attaches an "Attempted Clarification of Doc. 137" and a rebuttal to defense counsel's reply, both of which he claims were not filed with the Court. The Court granted Plaintiff an extension of time pursuant to his motion at Doc. 137, and his "clarification" would not effect the Court's order granting the extension.[79] To the extent Plaintiff's attached "rebuttal" is an attempt to further respond to the pending dispositive motions, it is denied. Plaintiff received multiple extensions of time and was allowed to file supplemental responses and a clarifications regarding the dispositive motions. The Court's Local Rules provide for a motion for summary judgment with supporting brief, an opposing brief, and a

---

failure to exhaust. Thus all federal claims have been resolved, and the Court declines to exercise supplemental jurisdiction as explained above.

[77] Doc.150.

[78] Doc. 151.

[79] Doc. 139.

reply.[80] Nothing suggests Plaintiff is entitled to a rebuttal to the reply, and the Court will not consider his arguments set forth in his attached rebuttal. Plaintiff has had ample time and opportunity to respond in this case. The motion is denied.

## V.    CONCLUSION

Defendants McCullough and Lundry are entitled to summary judgment in their favor because Plaintiff failed to exhaust his available administrative remedies prior to filing suit and Defendants were not deliberately indifferent to Plaintiff's serious medical needs. Any claims against the remaining defendants, Defendants Willnaur and Monir, are dismissed for failure to exhaust administrative remedies.  The Court declines to exercise supplemental jurisdiction over any remaining state law claims.

THE COURT THEREFORE ORDERS that Plaintiff's motion at Doc. 151 is **DENIED.**

THE COURT FURTHER ORDERS that Defendants' Motion for Summary Judgment (Doc. 115) is **GRANTED.**

THE COURT FURTHER ORDERS that Plaintiff's claims against the remaining defendants, Defendants Willnauer and Monir, are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

IT IS SO ORDERED.

Dated: May 19, 2023                          /s/ *Holly L. Teeter*
                                             HOLLY L. TEETER
                                             UNITED STATES DISTRICT JUDGE

---

[80] D. Kan. Rule 56.1; *see also* D. Kan. Rule 7.1; *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, at 902-03 (D. Kan. 2021) (finding under D. Kan. Rule 7.1(c) briefing on motions is limited to the motion (with memorandum in support), a response, and a reply, and sur-replies are permitted only with leave of court and under "rare circumstances" after good cause is shown) (citations omitted).